IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:

EL COMANDANTE MANAGEMENT
COMPANY, LLC, et als.,

Debtors.

CASE NO. 04-10938(ESL)

CHAPTER 11

## OPINION AND ORDER

This case came before the court on December 29, 2005, for an evidentiary hearing to consider the motions for appointment of a Chapter 11 trustee, and the oppositions thereto. The following motions were considered: "The Horse Racing Administrator's Urgent Motion For Appointment Of A Chapter 11 Trustee" (Docket entry No. 635); the "Supplement To The Horse Racing Administrator's Urgent Motion For Appointment Of A Chapter 11 Trustee"(Docket entry No. 649); the "Motion Joining Request For Appointment Of Chapter 11 Trustee" filed by Confederación Hípica de Puerto Rico, Inc. (Docket entry No. 655); the "Opposition To The Horse Racing Administrator's Urgent Motion For Appointment Of Chapter 11 Trustee And Request For Order Extending Provisional License" filed by the debtors (Docket entry No. 661); the "Addendum To Opposition To the Horse Racing Administrator's Urgent Motion For Appointment Of Chapter 11 Trustee And Request For Order Extending Provisional License" filed by the debtors (Docket entry No. 662); and, the "Official Unsecured Creditors' Committee's Opposition To The Horse Racing Administrator's Urgent Motion For Appointment Of A Chapter 11 Trustee" (Docket entry No. 647).

### Allegations of the Parties

A.   The Horse Racing Administrator of the Puerto Rico Horse Racing Industry and Sport Administration

On December 23, 2005, the Horse Racing Administrator (the Administrator) filed an urgent motion requesting the appointment of a chapter 11 trustee, on the grounds that, the

Administrator is a party in interest because the horse racing business is regulated by the Government of Puerto Rico (the Government) through the Puerto Rico Horse Racing Industry and Sport Administration (the Agency); the debtors are operating a horse racing business under a provisional license issued by the Agency which will expire on December 31, 2005; the license is one of the most valuable assets of the debtors' estate, and without the license, the debtors will not be able to continue operating, and the racing operation is the only source of income of the debtors. On December 20, 2005, the Agency, through its Board, denied the debtors' application to extend the provisional license after December 31, 2005, forcing the debtors to close down their business thereafter. On that same date, the Board also denied the debtors' application for permanent license. The Administrator alleges that it is likely that the debtors' business will face a shutdown after December 31, 2005, due to the fact that the plan proposed by Wells Fargo which does contemplate the continued operation of the business, "is not at an advanced enough stage to be approved at a hearing and effectuated by January 1, 2006." The Administrator also alleges that the disclosure statement on the plan proposed by the Indenture Trustee was just recently approved, and that the confirmation hearing has been scheduled for February 21, 2006. The Racing Administrator also alleges that the plan proposed by the debtors is not feasible as it contemplates the continued operation of the business by Caribbean Thoroughbred Racing Company, Inc. (Caribbean), and the Board has already denied Caribbean's application for a license.

The Administrator voiced the interest of the Government, as well as the responsibility to maintain and ensure the continuity of the horse racing industry in Puerto Rico, which can only be done through operating El Comandante facilities. The Administrator acknowledged that the closing of debtors' operations will have a negative impact in the Puerto Rico economy, such as, the lay-off of about 8,000 employees, as well as the Government's risk of losing $30 million annually in taxes.

- 2 -

The Administrator moved the court to appoint a chapter 11 trustee to operate the debtors' business until a plan of reorganization is confirmed in the instant case. The appointment of a trustee will enable the continued operation and an orderly transition until a qualified licensed entity is confirmed under the provisions of the plan of reorganization. The Administrator also recommends, that in order to ensure a smooth transition, attorney Wigberto Lugo Mender, be appointed as chapter 11 trustee, to avoid the closing of debtors' business after December 31, 2005, and to carry the debtors through the confirmation of the plan. The Administrator supplemented its position by issuing a resolution on December 28, 2005, wherein a temporary license is granted to Mr. Lugo Mender to operate the debtors' business or to whoever is appointed as trustee by the bankruptcy court. The Board's resolution states that the appointment of the trustee to be made by the bankruptcy court is subject to ratification by the Board. The provisional license approved by the Board on December 28, 2005, will expire on February 21, 2006. The Board also scheduled an administrative hearing on this matter for January 26, 2006 at 1:30 p.m., and directed the parties to appear accompanied by their legal representatives.

The Administrator further recommends that current management be maintained, including the debtors' General Manager, Mr. Alex Fuentes, who is the person in charge and knowledge of the Rules and Regulations of the horse racing industry. Likewise, the services provided by the current accounting firm of Rodríguez, Ocasio & Cuevas, through the supervision of Ms. Doris Barroso, should also be maintained. Thus, Mr. Lugo Mender's role will be "to oversee the day to day management of the debtors' business affairs," and his monthly compensation "will never exceed the total monthly compensation of $25,000 received by the current CEO of the debtors." The Administrator alleges that under the above circumstances, the appointment of a chapter 11 trustee is warranted. The Administrator's request is based on the provisions of

section 1104(a) of the Bankruptcy Code, either the appointment is warranted for cause, or in the interest of creditors. "Cause" is shown by the debtors' gross misjudgment by failing to timely apply for a license; by failure to timely make payments on post-petition rent; by failure to comply with the Federal Rules of Bankruptcy Procedure, such as, to protect debtors' exclusivity period by filing a plan of reorganization within the time provided by the Bankruptcy Code; by the conflict of interest between management and Caribbean; and, debtors' failure to have a confirmed plan after fourteen months since the filing of the bankruptcy petition.

The Administrator's further alleges that the appointment of a trustee will be beneficial for the debtors' estates to preserve the value of the estates, and will clearly benefit the creditors. Said appointment will also "protect the public interest which is entrusted to the Government in ensuring and protecting the continuity of the horse racing industry in Puerto Rico."

B.    Confederación Hípica de Puerto Rico, Inc.

Confederación Hípica de Puerto Rico, Inc. (Confederación) alleges that it represents 356 of the approximately 360 horse owners involved in the debtors' business operation. It is also a creditor of the debtors' estate who holds a $3.4 million claim, and it is a party to an executory contract not yet assumed or rejected by the debtors. Confederación joins the Administrator's request for appointment of a chapter 11 trustee; it joins the recommendation that Mr. Lugo Mender be appointed as trustee; it joins the recommendation made by the Administrator that whoever is appointed as trustee to retain the services of Alejandro Fuentes Fernández as General Manager in charge of the daily operations of the racetrack. Confederación argues that the appointment of Mr. Lugo Mender would solve a "crisis" due to the fact that the operations' license will expire on December 31, 2005, and said appointment will guarantee the continuation of the business operation. Confederación also states that the debtors have not presented any alternative upon which it may

continue operating after December 31, 2005. Confederación stands to lose a substantial amount if debtors' business is closed. Confederación also stated that its ultimate interest is to keep the business operating.

      C.      <u>El Comandante Management Company, LLC and related corporations</u>.

Debtors allege that the Administrator is not a party in interest within the definition provided by section 1109(b) of the Bankruptcy Code, insofar as the Administrator does not have a financial or legal stake in debtors' business, is not a creditor, is not an equity participant. If the Administrator is not a party in interest, then the Administrator lacks standing to move the court for the appointment of a trustee, particularly when the Board's refusal to extend the provisional license to the debtors was triggered by the Administrator's petition to deny said request. The debtors also plead that, even if the court finds that the Administrator is a party in interest, the request for appointment of a chapter 11 trustee should be denied based on the documents presented before the Racing Board concerning the application for a permanent license, and the extension of the provisional license. Debtors further explain the corporations' pre-petition relation with Equus Entertainment Corporation (Equus) and Codere of Puerto Rico, Inc. (Codere), and why Codere filed a request for a permanent license to operate El Comandante instead of the now debtors' corporations.

Debtors alleges that their license was to expire on December 14, 2004, and that this fact was informed to the court in the status conference held on December 20, 2004. When the debtors' license was about to expire, debtors' immediately moved the Board for the issuance of temporary license to operate thereafter. The Board approved debtors' request and issued a temporary license for 90 days, conditioned to certain restrictions, amongst them that the Administrator be appointed as a special monitor of debtors' operations.

Debtors argue that other entities also filed applications for permanent licenses, such as,

Camarero Racetrack Corporation (Camarero), the Puerto Rico Horses Racetrack, Inc. (Puerto Rico Horses), and Intralot Puerto Rico, Inc. (Intralot). Debtors moved the Board for the dismissal of such petitions, insofar as they failed to comply with the requirements to obtain a license. Debtors allege that the Board took the matter under advisement and has never ruled upon it. Instead, on February 24, 2005, the Board established a bar date to file applications for permanent license. Debtors allege that the Board has been informed, at all times, that if Codere was not successful in its application for license, or if it was withdrawn at any time, debtors or another entity would request the permanent license. Racing Management Corporation filed an application for license after the bar date. A hearing was held by the Board, and a determination was made denying the license to Racing Management Corporation because the application was filed after the bar date, and the evidence failed to show that the corporation had the corporate structure and/or the required financing to request the license.

Thereafter, on November 30, 2005, the Board approved Codere's request to withdraw its application for license, and the debtors filed their application on December 1, 2005. Meanwhile, the debtors' current administration had been successful, and the improvement in their finances have allowed the debtors to make all the post-petition payments, including taxes, insurance, pre-petition payments as allowed by the court, payment in the amount of $7.2 millions to Wells Fargo, the remodeling of debtors' facilities, and the undertaking of other capital improvements totaling an estimated amount of $1.5 millions. Debtors supported their allegations of the increase in their earnings before interest and taxes ( EBITA) for the years 2004 and 2005, and submitted an appraisal report that shows that the valuation of debtors' assets has increased from $62 millions on October 15, 2004 to $68 millions, as of July 1, 2005.

On December 20, 2005, the Board denied the debtors' request for an extension of the

temporary license to continue operating the race track business. Said determination is subject to an administrative appeal, thus, the decision is not yet final.

Debtors further allege that the appointment of a trustee is subject to the provisions of section 1104 of the Bankruptcy Code. A trustee may be appointed for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the debtors' affairs by the current management. Debtors allege that in the Administrator's urgent motion there are no allegations of fraud, dishonesty or incompetence. Even in the worst case scenario, if the Administrator challenges the debtors' request for permanent license, there is no reason why the extension of the temporary license cannot be granted. Even more so, when there are no allegations of fraud, dishonesty, or incompetence.

Debtors argue that the Administrator's request to appoint a trustee should be denied because the Board's taking of debtors' license should be considered as a violation of the stay. Debtors stand for the proposition that a license is property of the estate, and cites case law in support. Debtors allege that depriving them of the license to operate the business in this critical stage when there are two competing plans before the bankruptcy court is a violation of the automatic stay, and moved the court to deny the request for appointment of a trustee, and extends the debtors' temporary license for three months until a plan is confirmed.

Debtors raised the question that Caribbean's request for permanent license was also denied by the Board for filing the application after the bar date of March 31, 2005, notwithstanding the fact that the Board has been informed at all times, that if Codere withdrew its application for license, either the debtors or another entity would moved for a permanent license. The Administrator still blames the debtors for failure to timely file the application for permanent license, and categorized it as gross negligence and gross mismanagement.

- 7 -

The Administrator also alleges that the debtors' current management has incurred in a conflict of interest, referring to that Mr. Cuprill's role as CEO of debtors' corporations, and as Caribbean's officer and shareholder.

D.    Official Unsecured Creditors' Committee.

The Creditors' Committee (the Committee) alleges that the reasons set forth by the Administrator to move for the appointment of a chapter 11 trustee have always existed, but no action was taken until now. The Committee also alleges that "[a]ny emergency which may exist is entirely of the Administrator's own creation, and is within the Administrator's ability to solve." The grounds cited by the Administrator's as "cause" have been pending for fourteen months, such as, the debtors' failure to timely apply for a permanent license; allowing the land lease to be rejected, and management's alleged conflict of interest. The Administrator, however, failed to explain why these previous actions, which now constitute "cause," did not do so before.

The Committee raised the fact of the Board's refusal to extend the provisional license for two months necessary to reach the confirmation of the plan, and the debtors' expectation that such request would be granted based on the Board's prior decisions.

As to the Administrator's allegation that the value of the estate will be preserved by appointing a trustee, the Committee alleges that it is unclear how it would do so. By ousting the current management, it is unlikely that there will be any competitive bids for the racetrack, and it is unlikely that the unsecured creditors will recover more than the "miserly one currently offered by the bondholders."

The Administrator claims that the appointed trustee will be able to operate debtors' business and to keep the current operational status by continuing to employ all of the managers of the racetrack except for Mr. Cuprill. The Committee alleges that the Administrator had not taken

- 8 -

into consideration that current management may not wish to keep their employment if a trustee is appointed due to loyal considerations to the current management.

Lastly, the Committee raised the fact that the Administrator has a created a problem, which entails the possible closing of the debtors' business, by refusing to extend a temporary license. The Administrator is focused only in solving his problem through the appointment of a trustee without considering the consequences that this appointment may have, such as, the elimination of competitive bidding and the possibility of greater recovery for unsecured creditors. The Committee considers the appointment of a trustee to be a mistake.

The following parties stated their positions orally at the December 29, 2005 hearing:

A.     <u>Caribbean Thoroughbred Racing Company, Inc.</u>

Caribbean orally joined the debtors' opposition to the appointment of a chapter 11 trustee.

B.     <u>Wells Fargo, the Indenture Trustee.</u>

Wells Fargo, the Indenture Trustee, orally joined the motion requesting the appointment of a trustee, with the clarification that Wells Fargo's main concern is to avoid the closing of the debtors' operation in order to protect its interest in the debtors' estate.

C.     <u>The United States Trustee</u>

The U.S. Trustee, orally joined the Administrator's motion to appoint a chapter 11 trustee, although no new evidence was presented to put the court in a position to appoint a trustee. The U.S. Trustee stated that in view of the fact that the license to operate the business will expire on December 31, 2005, the appointment of a chapter 11 trustee was justified to keep the business as a going concern.

-9-

## NATURE OF PROCEEDINGS

A request for the appointment of a Chapter 11 trustee pursuant to 11 U.S.C. § 1104 (a) is a core proceeding pursuant to 28 U.S.C. § 157 (b)(2)(A),(O). The same may be brought by any party in interest. The Racing Administrator is a party in interest on account of his broad responsibilities over the horse racing industry. 15 L.P.R.A. §§ 198j and 198k.. The motion is a contested matter, Bankruptcy Rule 9014, requiring reasonable notice and opportunity for a hearing. Bankruptcy Rule 9006(d) requires at least five (5) days notice of the hearing, but the period may be shortened, Bankruptcy Rule 9006(c). The court finds that the motion was filed by a party in interest and that due notice and a hearing was afforded to the debtors in possession.

The grounds for the appointment of a trustee are specified in Section 1104 (a) of the Bankruptcy Code. If the grounds for appointment of a trustee are established by the moving party by a preponderance of the evidence after considering the totality of the circumstances and all relevant factors, then the court shall appoint a Chapter 11 trustee. Therefore, if the facts do establish that a trustee should be appointed, then the court must appoint a Chapter 11 trustee. Subsection 1104 (a)(1) states that the court shall order the appointment of a trustee for cause, including (but not limited to) fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor. Subsection 1104 (a)(2) provides that the court shall appoint a trustee if such an appointment is in the interests of creditors, any equity security holders, and other interests of the estates. The court notes that the appointment must be in the best interests of all constituencies, not just one or some.

It is settled in the district of Puerto Rico and in the first Circuit that the U.S. Trustee is the entity to appoint a Chapter 11 trustee and that the appointing authority does not lie in the bankruptcy court. In re Plaza De Diego Shopping Center, Inc., 911 F.2d 820 (1st Cir. 1990). In this case the movant in the motion to appoint the Chapter 11 trustee, the Racing Administrator, recommends and

- 10 -

prays that Mr. Wigberto Lugo Mender[1] be appointed as Chapter 11 trustee. The Racing Board, upon the request of the Racing Administrator has granted a temporary license to Mr. Lugo Mender to operate the El Comandante Racetrack, subject to his appointment as a Chapter 11 trustee. The authorization was granted on an expedited basis, that is, in less than one week. Although the circumstances of this case warrant prompt action, the time within which Mr. Lugo's license was authorized, albeit provisionally, drastically contrasts with prior experiences in this case. If the court cannot interfere or usurp the U.S. trustee's authority to appoint a Chapter 11 trustee, much less may a state agency administrator. The Assistant U.S. Trustee has supported the motion for the appointment of a Chapter 11 trustee, but did not, upon questions by this court at the December 29, 2005 hearing clearly define its position in light of the First Circuit case law. It is only noted, as stated by counsel for the Creditors' Committee, that the disparate treatment is suspicious.

Generally, the courts favor that the debtor in possession continues operating the business unless "it is inappropriate to permit the debtor and its management to continue in possession." 7 Lawrence P. King, Collier on Bankruptcy, ¶ 1104.02[1] (15th Edition Revised 2005). Only when extreme circumstances are present, such as, the debtor and/or management are "engaged in serious fraud or dishonesty, or have grossly mismanaged the business" will warrant the appointment of a trustee. Id. There is a presumption that the Chapter 11 debtor will be a debtor in possession. However, if the grounds specified in subsection 1104 (a) are met, then the appointment of a Chapter 11 trustee will be ordered. Clearly, it is the movant's burden to establish that the presumption that

---

[1]This court finds, based on its experience wherein Mr. Lugo Mender has been a trustee, debtor's attorney, or creditor's attorney, in cases before this court, that his performance has always been excellent, and that he is eminently qualified for an appointment as trustee in any complex case, including this one. Any decision on whether or not to appoint a Chapter 11 trustee is not, in any way, a reflection on Mr. Lugo's qualifications as a professional, or qualities as an individual.

- 11 -

a Chapter 11 debtor in possession should be divested of its power to manage its business affairs, and that the grounds in either subsections 1104 (a) (1) or (2) are met. It is within this court's discretion to determine whether or not the movant has established through a preponderance of the evidence if cause exists, or if the appointment of a Chapter 11 trustee is in the best interests of all constituencies.

## DISCUSSION

The evidence presented by the movants, the Racing Administrator and Confederación Hípica, in summary, establishes two main facts. First, that the Racing Board has denied debtors' request for a license to operate El Comandante Racetrack. Second, that it is of critical importance that the operations of El Comandante continue uninterrupted. Both facts are critical in the preservation of the value of the estate for the benefit of all creditors, secured and unsecured. According to movants, the only way to accomplish this is through the appointment of a Chapter 11 trustee. However, in order to prevail in their request for an appointment of a trustee, the movant(s) must establish that there is cause under 1104 (a) (1) or that the appointment is in the best interests of all constituencies. They have failed to meet their burden.

The movants did not present any witnesses. The documentary evidence presented substantially consists of the resolutions by the Horse Racing Board and pleadings before the same. These documents establish that the Racing Board has denied the debtors' request to extend the license to operate El Comandante Racetrack. The denial of a license to operate, within the context presented, addresses more the feasibility of debtors' proposed plan than the existence of cause to remove the current management from their responsibilities and appoint a Chapter 11 trustee. The arguments presented by counsel for the Racing Administrator may lend support to the Racing Board's decision, made upon the Racing Administrator's recommendation and/or request. Yet, the decisions do not raise to the level of seriousness warranting the appointment of a Chapter 11 trustee,

- 12 -

Particularly, when the appeal process of the Racing Board's decisions has not terminated. Moreover, the soundness of the Racing Board's decisions is not, at this juncture, within the province of this court. This bankruptcy court will not judicially review the decisions of the Racing Board. Such jurisdiction lies in the Puerto Rico "state" courts. This court will apply the Bankruptcy Code provisions over matters within its jurisdiction, which include the appointment of a Chapter 11 trustee and safeguarding the value of property of the estate.

A perusal of the motion for appointment of a Chapter 11 trustee filed by the Racing Administrator reveals several noteworthy recommendations. First, it has recommended the person to be appointed. This is an usurpation of the U.S. trustee's statutory powers. Also, the recommendation was made without consulting with the creditors' committee. Second, the motion recommends that the professionals already contracted by the debtor in possession continue working for the trustee recommended to be appointed. These professionals, as became apparent at the hearing, were not consulted, and most likely, will not accept working for a new employer for ethical reasons. Third, although recommendations only, the veiled inference is that the Racing Administrator, given his broad powers, will be dictating to the trustee what to be done in matters that are within his exclusive discretion, such as the hiring of professionals. This anomaly is highlighted by the likely possibility that the appointment of a Chapter 11 trustee will be for a period of less than three months. Fourth, the only disruptive factor in debtors' management appears to be, by logical deduction, the Chief Executive Officer, Mr. Charles A. Cuprill. The Racing Administrator recommends that all the management and professionals, except Mr. Cuprill be kept employed in order to provide continuity until a plan is confirmed and an entity can permanently operate the El Comandante Racetrack. The reasons are not clearly articulated in the motion, nor was there evidence presented to such effect at the evidentiary hearing.

The only evidence presented at the hearing regarding Mr. Cuprill's competence to manage the debtors' affairs was the testimony of Mr. Cuprill and that of the debtors' independent auditors, Horwath and Velez, through CPA José Benabás Lago. Their testimony showed that Mr. Cuprill is qualified to manage debtors" affairs and that the debtors' financial condition has improved since Mr. Cuprill became CEO. The Racing Administrator also imputes a conflict of interests to Mr. Cuprill as he is the CEO of ECMC, and is a director and shareholder of Caribbean Thoroughbred Corp., a corporation that is bidding to purchase debtors' assets. Such a conflict, assuming one exists, does not warrant the appointment of a trustee to divest the management from the debtor in possession as the same has been fully disclosed in all relevant documents and has been endorsed by debtors' principal shareholder, Mr. James J. Wilson.

The court highlights the admittance by counsel for the Racing Administrator that Mr. Cuprill has improved debtors' finances. The thrust of the arguments for the appointment of a Chapter 11 trustee is that the debtors, under Mr. Cuprill's management, did not submit a timely application for a permanent license to operate the El Comandante Racetrack. However, upon questions at cross examination Mr. Cuprill convincingly explained that debtors could not file a petition before the Racing Board for a permanent license while Codere had an active petition for such a license on account of their contractual commitments with Codere. To argue, on hindsight, that such a decision constitutes gross negligence because Codere subsequently withdrew the application is hyperbolic.

Attempts to argue at the hearing as additional grounds for the appointment of a Chapter 11 trustee, that debtors' disclosure statement does not contain adequate information or that the proposed amended Chapter 11 plan is not feasible, are misplaced and specious. The hearing on approval of debtors' disclosure statement has been scheduled for a hearing on January 9, 2006, and any objections, none of which have yet been filed in writing, will be heard on that date. Moreover,

- 14 -

discussing feasibility of debtors' amended Chapter 11 plan, as differentiated from the plan proposed by the Indenture Trustee, is premature as the hearing on approval of disclosure statement has not been held, a disclosure statement has not been approved, and a confirmation hearing to consider confirmation of debtors' amended Chapter 11 plan has not been scheduled. Any and all arguments regarding the adequacy of the disclosure statement and the feasibility of the plan do not adequately address the grounds for the appointment of a Chapter 11 trustee.

Confederación Hípica de Puerto Rico (Confederación) filed a motion joining the request made by the Racing Administrator for the appointment of a trustee. The motion, as well as the oral argument, stresses that the lack of a license to operate the El Comandante Racetrack is sufficient cause for the appointment of a trustee. The U.S. Trustee supported the request for the appointment of a Chapter 11 trustee on similar grounds. Because on this day the court has entered a temporary restraining order as well as an order to show cause why a preliminary injunction should not be issued, their position loses much, if not all of its strength, at least at this time. Neither Confederación or the U.S. Trustee argued or presented any evidence of fraud, mismanagement or malfeasance. Also, they did not present any evidence why the appointment of a Chapter 11 trustee would benefit all constituencies. The court notes that Confederación represents 356 of approximately 360 horse owners and is a member of the Creditors' Committee, that has, as a Committee, opposed the appointment of a Chapter 11 trustee in writing, as well as orally, arguing that the movants did not present a prima facie case for an appointment of a trustee, particularly when there is no mismanagement and debtors' financial position has improved. The court also notes that all entities that have shown an interest in purchasing debtors' assets include horse owners.

The administrative costs to be incurred in appointing a Chapter 11 trustee are not a decisive factor, but are relevant to a decision. Clearly, if a Chapter 11 trustee is to be appointed, and if the

- 15 -

trustee is to responsibly discharge the responsibilities that such a position entails, professionals, that is, attorneys, financial advisors, accountants and auditors must be retained. definitely, such administrative expenses will dilute dividends to unsecured creditors. Such an additional expense, under the circumstances, and for a only three months, is unwarranted. The court notes that the professionals presently working for the debtor in possession may not work for a Chapter 11 trustee for conflicts or appearance motives.

CONCLUSION

The movants have failed to establish through a preponderance of the evidence, based on the totality of the circumstances and factors, that there is cause to appoint a Chapter 11 trustee under subsection 1104 (a) (1), nor have they established that the interests of all constituencies would benefit, as is required by subsection 1104 (a) (2). When the evidence shows that current management is competent and capable and able to administer debtors' financial and operational affairs, there is no need to appoint a Chapter 11 trustee. Failure to timely file an application for a permanent license and facing the denial of an extension of a temporary one, under the circumstances of this case, does not warrant the appointment of a Chapter 11 trustee.

In view of the foregoing, the motions for the appointment of a Chapter 11 trustee are hereby denied.

SO ORDERED.

In San Juan, Puerto Rico, this 30 day of December, 2005.

Enrique S. Lamoutte
U.S. Bankruptcy Judge

- 16 -