IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:

EL COMANDANTE MANAGEMENT
COMPANY, LLC, et al.,

Debtors.

CASE NO. 04-10938 (ESL)

CHAPTER 11

(Jointly Administered)

## OPINION AND ORDER

This case came before the court on February 21, 2006, to consider the approval of the Third Amended Disclosure Statement filed by the debtors ("Debtors' Disclosure Statement") (Docket No. 758), and the objections filed by the Puerto Rico Treasury Department ("Treasury") (Docket No. 895), Wells Fargo Bank, National Association, as the Indenture Trustee (Docket No. 906), Camarero Race Track Corp. ("Camarero") (Docket No. 908), and a limited objection filed by the Horse Racing Administrator of the Puerto Rico Horse Racing Industry and Sport Administration ("the Administrator"), Jorge Silva Puras, as the Secretary of the Department of Economic Development and Commerce of the Commonwealth of Puerto Rico, and Juan Vaquer Castrodad, as Executive Director of the Land Administration of the Commonwealth of Puerto Rico (collectively "government officials") (Docket No. 898).

### Debtors' Disclosure Statement

The debtors' disclosure statement and proposed plan are based on an agreement reached by the Puerto Rico Horse Race Track, Inc. (PRHRT") and debtor Housing Development Associates, S.E. ("HDA") to operate the race track. The disclosure statement and consequently, the plan, are contingent on the approval of the license application submitted by the PRHRT to operate the business and is now pending before the Puerto Rico Racing Board. The debtors have submitted documentary and testimonial evidence in support of the financial commitment entered into by the

PRHRT, HDA, Newco and Banco Popular, that will enable the transaction and feasibility in which the debtors' disclosure statement and proposed plan are premised. The financial analysis submitted by the debtors was supported by the testimony of a certified public accountant, Ms. Doris Barroso Vicens, who also prepared the debtors' financial projections.

### Objections filed by the creditors and other parties in interest

Treasury objected to the approval of the debtors' disclosure statement on several grounds, to wit: (a) the disclosure statement lacks adequate information; (b) the treatment to be provided to Treasury's claim under the plan, as opposed to a Closing Agreement entered into by Treasury and debtors prior to the filing of the petition for the payment of trust fund taxes, and a stipulation entered into by the debtors with the Indenture Trustee for adequate protection payments which specifically excludes payments to Treasury; (c) certain inconsistencies in the provisions of the debtors' disclosure statement as to the amounts owed to Treasury and the tables reflecting the financial analysis of the proposed plan; (d) the "tax exemptions" provision is ambiguous, insofar as it fails to describe what type of transactions may be subject to tax exemptions; and (e) the liquidation analysis fails to include an appraisal report of the debtors' assets.

The government officials objected only as to the ambiguity of the provisions of articles 4.10 ("Release"), 4.11 ("Injunction and Bars Against Claims") and 4.12 ("Intent of Injunction") of the debtors' proposed plan, and how said provisions may have an adverse impact on the government and certain legal actions which are now pending before the court or may be forthcoming in the future. The government officials simply requested a clarification and a more definite statement of said provisions in the disclosure statement as well as the plan.

The Indenture Trustee objected to the debtors' disclosure statement on several grounds, which Camarero joined through a separate motion. For discussion purposes only, the objections of

- 2 -

the Indenture Trustee and Camarero will be summarized together. The Indenture Trustee alleges that the debtors' disclosure statement is inadequate and the proposed plan is not feasible. According to the Indenture Trustee, the debtors' disclosure statement is inadequate for it lacks information on: (a) the substantive consolidation of the three debtors' estate and its impact on the noteholders; (b) an improper classification and unfair treatment of the Indenture Trustee's general unsecured deficiency claim; (c) the PRHRT, the entity that will operate the race track in the event the debtors' plan is confirmed, does not have a license duly issued by the Puerto Rico Racing Board, and the unlikelihood of obtaining one; (d) the proposed sale and management transaction between debtor HDA and the PRHRT is questionable; (e) the impact on the feasibility of debtors' proposed plan if the license application of the PRHRT is denied by the Puerto Rico Horse Racing Board; (f) the terms and agreements regarding the financial commitment of Banco Popular, the PRHRT, HDA and Newco, including the amount of cash to be ready available on the effective date of the plan; (g) the treatment and estimated amount of the claims filed against the debtors, as well as the disputed claims, and their impact on the feasibility of the plan; (h) the liquidation analysis of the debtors is questionable; (i) the risks to confirmation, particularly if the debtors or the PRHRT failed to obtain a license to operate the race track; (j) the tax impact, if any, that the debtors' proposed plan will have on the debtors and the holders of secured claims; and (k) the feasibility of the plan. Camarero also questioned the lack of information of debtors' business operations in the Dominican Republic; the status of the contractual relationship and pending litigation between the debtors and Confederación Hípica de Puerto Rico, Inc. ("Confederación"), and the inconsistencies in the financial projections and the source(s) of the funds.

<strong><u>Debtors' response to the objections</u></strong>

Debtors acknowledge the debt owed to Treasury, although not the interests accrued. Debtors

- 3 -

also alleged that the objection raised by Treasury is a confirmation issue rather than a disclosure statement issue, but in any event, the priority claims will be paid in full under the proposed plan.

As to the limited objection raised by the government officials, and the clarification requested by them, the debtors argued that the Puerto Rico Racing Administrator, the Puerto Rico Racing Board, nor Messrs. Silva Puras and Vaquer Castrodad, in their official capacities, are in a position to object to the confirmation of debtors' proposed plan. Debtors clarified that the provisions regarding release and injunctions under the proposed plan will not impair the filing of counterclaims by third parties provided that the debtors are the movants or plaintiffs in the postpetition action.

The debtors addressed the objections raised by Camarero separately from those made by the Indenture Trustee, insofar as they were presented separately. Debtors argued that regardless of the several unfounded allegations made against Mr. Wilson, the agreement reached by the PRHRT and the debtors, specifically provides that Mr. Wilson, his family nor his corporations will participate in the operations of the race track. Moreover, the agreement specifically provides that Mr. Wilson has to furnish a $10,000,000.00 collateral as guaranty. In other words, Mr. Wilson stands to lose $10,000,000.00 if he does get involved in the business operations, according to the terms and conditions set forth by Banco Popular. It is correct that the sources of the funds are not identified, however, the funds will be comprised by the amount of $400,000.00 from working capital and the other funds will come from investments to be provided by Newco. As to the license status of the PRHRT, the debtors argued that the process pending before the Puerto Rico Racing Board is in an advanced stage; all the documents requested by the Board to the PRHRT have been submitted; the Board held an administrative hearing on February 16, 2006; Spectrum, the entity in charge of PRHRT's investigation, has informed the debtors that the investigation has concluded and a report will be filed on or about March 3, 2006; and, the Board has scheduled a hearing for February 22,

2006. The information regarding the professional fees of management, such as, Mr. Cuprill's compensation salary, is disclosed in the disclosure statement. Debtors clarified that in the future, Mr. Cuprill need not be the president of El Comandante.

Debtors argued that their proposed plan provides a higher distribution than the Indenture Trustee's proposed plan. This fact was admitted by the Indenture Trustee when asked by the court.[1] According to the debtors, their plan offers to pay $68,000,000.00 plus, on the effective date of the plan, and an additional $2,000,000.00 to be paid over the term of five (5) years. The financial projections are based on the value of the real estate, which has been estimated in the amount of $63,000,000.00 as per the appraisal report prepared by American Appraisal Associates.[2] Said value has not been objected by any of the parties. The debtors will also surrender their interests under their notes. In sum, more than $70,000,000.00 will be paid to creditors. Secured and unsecured creditors will be paid in full.

### Applicable Law and Discussion

A.  Adequate Information under 11 U.S.C. § 1125(a)(1).

Section 1125(a) of the Bankruptcy Code governs the content of the disclosure statement. The information must be adequate. Section 1125(a)(1) defines adequate information as "information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, that would

---

[1] The Indenture Trustee, however, clarified that the higher distribution was contingent on the approval of the license to operate the business, and that the funds were available on the effective date of the plan.

[2] The court reminded the parties that a finding as to the value of the total assets of El Comandante has not been made by the court. The only finding that has been made is that the property has no equity due to the lien of the Indenture Trustee, which encumbers almost all of the debtors' assets.

- 5 -

enable [a creditor] of the relevant class to make a judgment about the plan, but adequate information need not include such information about any other possible or proposed plan." When determining whether the information provided in the disclosure statement is adequate, Norton states:

> In adopting the "adequate information" standard, Congress provided the bankruptcy court with the ability to adopt a practical approach in evaluating the nature and substance of information provided. Under this standard, bankruptcy courts are able to evaluate the adequacy of the information provided in light of the circumstances in each case, including the costs of preparation of the statements and the solicitation, the need for a quick solicitation and confirmation, and the identity of the investors."

4 William L. Norton, Jr., Norton Bankr. L. & Practice 2d § 86.22 (2005).

Whether or not the information provided in the disclosure statement is adequate will be determined by the Bankruptcy Code and "is not governed by any otherwise applicable nonbankruptcy law, rule, or regulation ...". *In re Public Service Company of New Hampshire*, 43 F.3d 763, 766 (1st Cir. 1995).

B.   Investor Typical of holders of claims or interests of the relevant class under 11 U.S.C. § 1125(a)(2).

Section 1125(a)(2) of the Bankruptcy Code provides who is an investor typical of holders of claims or interests of the relevant class also known as the hypothetical investor. It means an investor having "(A) a claim or interest of the relevant class; (B) such a relationship with the debtor as the holders of other claims or interests of such class generally have; and (C) such ability to obtain such information from sources other than the disclosure required by this section as holders of claims or interests in such class generally have."

It may be assumed, thus, that the "quality of information available to members of a given class will vary as will the sophistication of members of various classes." 7 Lawrence P. King, Collier on Bankruptcy, ¶ 1125.02[3] 15th Edition Revised (2005). For example, a financial entity

- 6 -

is presumably more sophisticated in financial matters than the trade creditor and *vice versa*. Id. Thus, the court will determine the adequacy of the information contained in a disclosure statement on a case-by-case, after taking into consideration the particular needs of each class of creditors or the needs of a class as a whole, not the needs of a particular creditor. 4 Norton Bankr. L. & Practice 2d § 91:4. Thus, the court will determine the adequacy of the information contained in a disclosure statement on a case-by-case, after taking into consideration the particular needs of each class of creditors or the needs of a class as a whole, not the needs of a particular creditor. Norton § 91:4.

C. Plan issues may be considered at a hearing on approval of disclosure statement.

At the hearing on the approval of a disclosure statement, the court may consider issues pertaining to the plan and rule upon such issues when the plan defects will make it unconfirmable. *In re Felicity Associates, Inc.*, 197 B.R. 12, 14 (Bankr. D. Rhode Island 1996). Relevant issues pertaining to the plan are the classification of claims, an artificial classification of a claim, whether the plan unfairly discriminates against a class of claims, and the solicitation procedure. *See In re Hillside Park Acts., L.P.*, 205 B.R. 177 (Bankr. W.D. Missouri 1997). Thus, it is within this court's discretion to address these issues prior to the confirmation of the plan, although a final determination need not be made at this time.

D. Separate classification of deficiency claims under 11 U.S.C. § 1122.

Section 1122 of the Bankruptcy Code governs the classifications of claims or interests. Generally, the debtor may classify similar claims or interests in a particular class only if they are substantially similar to the claims and interests of such class. 11 U.S.C. § 1122(a). The plan may also designate a separate class of claims consisting only of every unsecured claim that is less than or reduced to an amount that the court approves as reasonable and necessary for administrative

- 7 -

purposes. 11 U.S.C. § 1122(b).

Generally, unsecured creditors will fall in two (2) classes, priority and general unsecured. 1 Richard I. Aaron, Bankruptcy Law Fundamentals § 12:4 (2005). Under the general unsecured creditors, it is permissible to classify claims according to their value. For example, claims of $1,000.00 or less may be classified separately for administrative convenience. When a creditor objects to a classification of claims, the "burden is on the debtor to show a legitimate non-gerrymandering reason for separate classification and to establish how the legal nature of the separately classified claim differs." *See In re Barney & Carey Co.*, 170 B.R. 17, 24 (Bankr. D. Mass. 1994).

The general rule in our circuit is that "all creditors of equal rank with claims against the same property should be placed in the same class." *Grenada Wines, Inc.*, 748 F.2d 42, 46 (1st Cir. 1984) (Citations omitted.) However, the First Circuit decision also stands for the proposition that a separate classification for unsecured creditors is justified "where the legal character of their claims is such as to accord them a status different from the other unsecured creditors." Id. *See also In re River Valley Fitness One Limited Partnership*, 2003 WL 22298573 (Bankr. D. N.H. September 19, 2003).

E.      Unfair discrimination of claims under 11 U.S.C. § 1123(a)(4).

Section 1123(a)(4) of the Bankruptcy Code provides that "a plan shall provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agree to a less favorable treatment of such particular claim or interest." The Bankruptcy Code nor its legislative history defines which are the standards of same or equal treatment of claims. Collier ¶ 1123.01[4]. "The prohibition against unfair discrimination requires equal treatment of similarly situated creditors." *In re Barney*, 170 B.R. at 25 (citing *Granada Wines, supra*). Under

- 8 -

the unfair discrimination test, the "differentiated treatment of similar classes intended merely to induce acceptance by one class fails." Id. (Citations omitted.) When a creditor objects to the classification of a particular class of claims, "[t]he burden is on the debtor to show that unequal treatment between classes having the same priority does not constitute unfair discrimination." Id.

F. Disclosure Statement filed by debtors.

After considering the debtors' third amended disclosure statement and the argument presented by counsel at the hearing held on February 21, 2006, the court hereby approves the same as containing adequate information in light of the nature of the debtors and the proposed Chapter 11 plan to enable a hypothetical reasonable investor typical of holders of claims or interests in the case to make an informed judgment about the plan, provided that within five (5) days the debtors supplement the same to indicate that the secured claim filed by the bondholders, Class 2, is an impaired class entitled to vote on the plan. The disclosure statement provides a clear summary of the plan, indicating the amounts that each class should receive, the source of the funds to make the payments, the corporate structure that will implement the plan, and the pending application by PRHRT to obtain a license to operate the horse racetrack.

There is no liquidation analysis. However, since the early stages of the bankruptcy proceedings it has been found as an uncontested fact that under any scenario presented to the court there is no equity in any of the debtors' assets, either individually or combined. Consequently, the proposed plan unquestionably will pay creditors more than they would receive under a Chapter 7 liquidation process. Moreover, the court may approve a disclosure statement without a valuation of debtors' assets. 11 U.S.C. § 1125(b).

The debtors' third amended plan classifies the bondholders' deficiency claim separately from other general unsecured creditors. The Indenture Trustee argues that such a

classification makes the plan non confirmable, and, thus, the disclosure statement cannot be approved. As discussed above, such a classification is generally impermissible in this Circuit. However, it is not entirely proscribed. A debtor may separately classify a deficiency claim if it can justify that the "legal character of their claims is such as to accord them a status different from the other unsecured creditors." *Granada Wines,* 748 F.2d at 46. The reason articulated by the debtors at the hearing is three-fold. First, deficiency claims in bankruptcy have a legal option not existent elsewhere, as there is an election to be treated entirely as secured under 11 U.S.C. § 1112(b). Second, the bondholders' claim is being paid an amount higher than its own plan, on both the secured and unsecured portions. Third, the debtors are surrendering their own bonds with no request for payment if the plan is confirmed. The court finds that such factors do not make the separate classification defective on its face, and warrants that the third amended plan be put to the confirmation test.

The testimony by the officer from Banco Popular de Puerto Rico, the financing institution providing the funds for the plan, clearly established that the financing commitment is in place and sufficient to meet the plan requirements. The testimony of Ms. Doris Barroso Vicens, CPA, partner of the firm engaged by the debtors to provide accounting and financial consulting services, who directly assisted in the preparation of the projections and proposed plan, shows that the projections are sufficiently accurate to determine the feasibility of the plan.

The disclosure that the PRHRT is in the process of obtaining the license to operate the racetrack is adequate under the circumstances. Any opinion as to the ultimate decision by the Racing Board to grant or deny the same would be speculative. That the applicant has submitted all the required documents to make it eligible is sufficient at this juncture.

The court also heard the objections by Camarero, the prospective purchaser in the

- 10 -

plan proposed by the Indenture Trustee, and three government officers, two of which are respondents/defendants in actions initiated by the debtors, and one is the Racing Administrator. The court indicated that only the Racing Administrator is a party in interest on account of his statutory duties and responsibilities over the racing industry, and so would be the Racing Board. Camarero is not a creditor and may not vote on any plan. It may have an interest in the case as a prospective purchaser, but that interest does not necessarily mean that it is a party in interest in the case. Such is the case of the government officers whose only relation is that they are respondents/defendants in the case. Notwithstanding, the merits of their objections do not warrant that the third amended disclosure statement not be approved. The financing details of debtors' plan are not only adequate, but have been more fully disclosed than Camarero's source of financing to purchase the debtors' assets under the plan proposed by the Indenture Trustee. The status of the license is adequately disclosed. Other details indicated by Camarero as lacking are not indispensable to place any class of creditors in a position to make a judgment about the plan.

The government officers' concerns are centered on the broad injunction resulting from confirmation regarding actions by claims holders. As it became apparent during the hearing, the concern was misplaced and clarified by the debtors. The officers can defend themselves in actions brought by the debtors, and can counterclaim on such actions. Since they do not a claim or an interest on the debtors they are not covered by the plan's injunctive provisions.

The objection by the Treasury Department is due to its perception that the description of its claim may not indicate that its priority portion will be paid in full. The plan states that priority taxes will be paid in full. The law requires that priority taxes be paid in full. The priority taxes will be paid in full in such amounts as they are finally allowed.

- 11 -

## Conclusion

In view of the foregoing, the debtors' third amended disclosure statement is approved. A separate order may be issued scheduling a hearing on confirmation of debtors' third amended Plan, depending on the results of the hearing on confirmation of the plan proposed by the Indenture Trustee.

The debtors may not engage in solicitation of acceptances from the beneficial owners of the bonds prior to this court approving procedures to such effect pursuant to Rule 3017(d)(e) of the Federal Rules of Bankruptcy Procedure. The procedures must include an "opt-out" provision for beneficial owners of bonds who specifically request confidentiality of their identity, prior to any direct solicitation from the beneficial bondholders.

Debtors shall move the court within twenty (20) days for approval of procedures to solicit acceptances from the beneficial owner of the bonds.

SO ORDERED.

In San Juan, Puerto Rico, this 3rd day of March, 2006.

ENRIQUE S. LAMOUTTE
U.S. Bankruptcy Judge

- 12 -