IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:

EL COMANDANTE MANAGEMENT
COMPANY, LLC, et al.,

Debtors.

CASE NO. 04-10938 (ESL)

CHAPTER 11

(Jointly Administered)

## OPINION AND ORDER

This case came before the court on February 21, 2006, to consider the approval of the Disclosure Statement filed by Caribbean Thoroughbred Racing Co., Inc., ("Caribbean's Disclosure Statement") (Docket No. 781), and the objections filed by the Puerto Rico Treasury Department ("Treasury") (Docket No. 896), Wells Fargo Bank, National Association, as the Indenture Trustee (Docket No. 907), and Camarero Race Track Corp. ("Camarero") (Docket No. 909). For the reasons set forth below, Caribbean's request for approval of the disclosure statement is denied.

### Caribbean's Disclosure Statement

The disclosure statement and proposed plan filed by Caribbean are premised on the purchase of substantially all of the assets of the debtors, El Comandante Management Company ("ECMC"), Housing Development Associates, S.E. ("HDA"), El Comandante Capital Corp. ("ECCC") (collectively the "debtors"). The disclosure statement and consequently, the plan, are not contingent on the approval of the license application submitted by Caribbean to the Puerto Rico Racing Board ("Racing Board") to operate the business. Caribbean's license application was denied by the Racing Board on December 19, 2005 on the ground that it was filed tardy, that is, after March 31, 2005, the bar date set by the Racing Board. Caribbean's request for reconsideration was denied on December 21, 2005. On January 19, 2006, Caribbean appealed the Racing Board's determination, and it appears that the matter is still pending. The disclosure statement filed by Caribbean provides

that, in the event that Caribbean's plan is confirmed and Caribbean does not have a license, Caribbean will move the court to extend the temporary injunction issued on behalf of the debtors, in order to continue operating the race track business without interruptions.

Under Caribbean's proposed plan, the Indenture Trustee will receive a portion of the cash resulting from the $65.5 million purchase price of the debtors' assets. The plan also provides to pay in full all the allowed administrative expense claims, the priority tax claims, and other priority unsecured claims. Under the proposed plan an initial distribution will be made to the allowed general unsecured creditors. Caribbean will deposit the amount of $1.5 million in a reserve account to pay the general unsecured claims. The plan also provides for the execution of an Earn-Out Agreement wherein the proceeds obtained from the use of the video-games machines will be distributed to the holders of the trust within ten (10) years. The Earn-Out Agreement is contingent on the government's approval of new legislation that will govern the installation and operation of the video-games machines. Under the proposed plan, the general unsecured creditors and the general unsecured deficiency claim of the bondholders filed by the Indenture Trustee are classified in the same class. Unlike the general unsecured creditors, the bondholders will not receive an initial distribution under their deficiency claim after the closing of the purchase of the debtors' assets, except for the distribution under the secured portion of the claim. Caribbean's proposed plan will pay an estimated amount of $3,000,000.00 more than the proposed plan filed by the Indenture Trustee.

### Objections filed by the creditors and other parties in interest

Treasury objected to the approval of the Caribbean's disclosure statement on several grounds, to wit: (a) the disclosure statement lacks adequate information; (b) there are certain inconsistencies in the provisions of the debtors' disclosure statement as to the amounts owed to Treasury and the

- 2 -

tables reflecting the financial analysis of the proposed plan; (c) the amounts of the priority claims to be paid from the proposed Allowed Priority Tax Claim Reserve are inconsistent, confusing and unacceptable to Treasury; (d) there is a discrepancy on the proposition that Treasury's Claim No. 77 will be paid in full when the amount of $6,486.74 is being disputed; (e) the proposed plan provides, in general, that if the amount of the "allowed claims" is greater than the amount projected by the debtors, then the holders of the allowed claims will receive "a reduced percentage of recovery," no distinction is made amongst the claims, thus, Treasury's recovery may be adversely affected under the Risk Factors provisions of the disclosure statement and plan; (f) Caribbean's plan is contingent on two premises which are essential under the plan and which are non-existent at this time, that is, the Racing Board's approval of the license to operate the business, and the government's approval of new legislation for the installation and operation of the video-games machines; (g) the "tax exemptions" and the "transfer taxes" provisions are ambiguous, insofar as they fail to describe what type of transactions may be subject to tax exemptions and which are not; and (h) the disclaimer statement regarding the accuracy of the information contained in the disclosure statement is "unsettling" to Treasury, insofar as Caribbean states that "no more diligence is necessary from its part." (Docket No. 896 at page 5).

The Indenture Trustee objected to Caribbean's disclosure statement on several grounds, which Camarero joined through a separate motion. For discussion purposes only, the objections of the Indenture Trustee and Camarero will be summarized together. The Indenture Trustee alleges that Caribbean's disclosure statement is inadequate and the proposed plan is not feasible, because it is contingent on a continuous business operation when Caribbean does not have a license to operate the race track, and it is unlikely that it will obtain such license. According to the Indenture Trustee, Caribbean's disclosure statement is inadequate for it lacks information on: (a) the classification of

- 3 -

the Indenture Trustee's secured portion of the claim and the general unsecured deficiency claim; (b) basic financial information for the investor to determine whether the proposed plan is feasible; (c) Caribbean does not comply with the license requirement to operate the business, and the assurance of continued operations of the race track even under a licensed entity is uncertain; (d) the financing capability of Caribbean is questionable; (e) the secured and unsecured deficiency claim of the Indenture Trustee have been treated as unimpaired claims, and such treatment is prejudicial to the bondholders, as well as Caribbean's treatment of the Indenture Trustee's administrative claim; (f) the liquidation analysis of Caribbean is inadequate; (g) the balloting and voting procedure is questionable; (h) the information on Caribbean's management is ambiguous; (i) the release provisions are inadequate and unjustified; (j) lack of information on the Earn-Out Agreement; (k) the deficiency claim of the Indenture Trustee will receive nothing under the proposed plan; and (l) Caribbean's use of the $4,000,000.00 deposit posted for the auction proceeding is inaccurate, insofar as it may be forfeited by the Indenture Trustee. Camarero also voiced a concern as to the motive of the transfer of the claim made by creditor Isabel Aibar [sic] to Caribbean. The amount of the claim is $935.60. Camarero alleges that, based on the purchase and transfer of the above claim, the approval of Caribbean's disclosure statement should be denied, as the same was filed in "bad faith with the only purpose to block Wells Fargo's plan and to further its own economic interests." (Docket No. 909 at page 3).

### Caribbean's response to the objections

Caribbean acknowledges Treasury's concern, particularly the tax concern regarding the purchase of the assets, and the recording of the sale in the Property Registry, but affirms that no additional due diligence is necessary by Caribbean at this time. As to the status of the license procedure, Caribbean informs that a hearing on appeal has been scheduled for March 7, 2006 to

consider the Racing Board's determination denying Caribbean's license application. If the plan is confirmed, Caribbean will operate the race track through ECMC.

Caribbean further explains that the financing commitment issued by WesternBank for the purchase of debtors' assets is not contingent on obtaining a license to operate the race track. WesternBank's financing commitment was updated on January 20, 2006, and the amount of the loan was increased to $73,000,000.00. In any event, Camarero does not have a permanent license to operate the race track as required by law, only a provisional license has been issued by the Racing Board, and the license is contingent to the purchase of debtors' assets. Caribbean is challenging said determination.

As to the general unsecured deficiency claim of the Indenture Trustee, the same is treated as an impaired class entitled to vote. Although Caribbean's plan does classify the Indenture Trustee's deficiency claim in the same class with the general unsecured claims, not all the members of this class will receive a distribution on the effective date of the plan. As to the $4,000,000.00 deposit posted by Caribbean for the auction proceeding, the same is not under the control of the Indenture Trustee, insofar as it was deposited in an escrow account pursuant to the auction and bidding procedures approved by the court.

**Caribbean's Disclosure Statement v. the Indenture Trustee's Disclosure Statement**

When several disclosure statements are presented to the court, a careful analysis is mandated to protect the interests of all the parties involved. In the instant case, three disclosure statements have been filed, to wit: (a) the Indenture Trustee's (Docket No. 555), as supplemented (Docket No. 591); (b) debtors' (Docket No. 758); and (c) Caribbean's (Docket No. 781). The Indenture Trustee's Disclosure Statement was approved on December 20, 2005 (Docket No. 619).

The disclosure statement and proposed plan filed by the debtors provide for the substantive

-5-

consolidation of the estates and the payment in full of all creditors on the effective date of the plan. Debtors' proposed plan provides that $68,000,000.00 will be distributed to all creditors on the effective date of the plan plus $2,000,000.00 over the period of five (5) years.[1]

The disclosure statements and proposed plans filed by Caribbean and the Indenture Trustee are similar. A summary of such similarities is warranted in light of the objections raised by the Indenture Trustee's to Caribbean's disclosure statement. Under both plans, the estates will be administered separately and both are premised on the execution of the Asset Purchase Agreement. None of the plans provide for full payment or distribution to creditors on the effective date of the plan, only partial distribution will be made, although Caribbean's proposed plan will pay $3 million than the Indenture Trustee's proposed plan. Both plans are contingent on the purchase of debtors' race track and other assets. The purchase agreements proposed by Caribbean and the Indenture Trustee are both contingent on the execution of an Earn-Out Agreement which will create an Earn-Out Trust. The Earn-Out Agreement, and consequently, the trust, will be created by the purchaser of the race track. The funding of the trust is contingent on the government's approval of new legislation to govern the installation and operation of the video-games machines, otherwise the purchaser will have to fund the trust. If the new legislation is enacted, both Caribbean and the Indenture Trustee will make a distribution to the beneficiaries of the trust from the proceeds of the Earn-Out Trust within ten (10) years to be determined on the "Trigger Event" date. The "Trigger Event" is the date when the purchaser of the debtors' assets "has installed at least 500 VGMs on or off the premises of the Racetrack" provided that the new legislation is enacted, and the purchaser has obtained all the necessary governmental permits for the installation and operation of such equipment.

---

[1] The Indenture Trustee has admitted that, if the court determines that the debtors' plan is confirmable, then all creditors will receive more under the debtors' plan than under the Indenture Trustee's plan.

In sum, the distribution proposed by both Caribbean and the Indenture Trustee under the Earn-Out Agreement is remote and uncertain at this time.

Neither Caribbean's nor the Indenture Trustee's proposed plans have all the resources to immediately operate the race track. Caribbean may be able to purchase the race track but lacks the license to operate the same. The Indenture Trustee has a potential purchaser with a provisional license to operate the business but must finalize the asset purchase agreement with Camarero through confirmation of its plan to obtain a race track.

**Applicable Law and Discussion**

A.     Adequate Information under 11 U.S.C. § 1125(a)(1).

Section 1125(a) of the Bankruptcy Code governs the content of the disclosure statement. The information must be adequate. Section 1125(a)(1) defines adequate information as "information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, that would enable [a creditor] of the relevant class to make a judgment about the plan, but adequate information need not include such information about any other possible or proposed plan." When determining whether the information provided in the disclosure statement is adequate, Norton states:

> In adopting the "adequate information" standard, Congress provided the bankruptcy court with the ability to adopt a practical approach in evaluating the nature and substance of information provided. Under this standard, bankruptcy courts are able to evaluate the adequacy of the information provided in light of the circumstances in each case, including the costs of preparation of the statements and the solicitation, the need for a quick solicitation and confirmation, and the identity of the investors."

4 William L. Norton, Jr., Norton Bankr. L. & Practice 2d § 86.22 (2005).

Whether or not the information provided in the disclosure statement is adequate will be determined by the Bankruptcy Code and "is not governed by any otherwise applicable

- 7 -

nonbankruptcy law, rule, or regulation ...". *In re Public Service Company of New Hampshire*, 43 F.3d 763, 766 (1st Cir. 1995).

    B.    <u>Investor Typical of holders of claims or interests of the relevant class under 11 U.S.C. § 1125(a)(2)</u>.

    Section 1125(a)(2) of the Bankruptcy Code provides who is an investor typical of holders of claims or interests of the relevant class also known as the hypothetical investor. It means an investor having "(A) a claim or interest of the relevant class; (B) such a relationship with the debtor as the holders of other claims or interests of such class generally have; and (C) such ability to obtain such information from sources other than the disclosure required by this section as holders of claims or interests in such class generally have."

    It may be assumed, thus, that the "quality of information available to members of a given class will vary as will the sophistication of members of various classes." 7 Lawrence P. King, <u>Collier on Bankruptcy</u>, ¶ 1125.02[3] 15th Edition Revised (2005). For example, a financial entity is presumably more sophisticated in financial matters than the trade creditor and *vice versa*. <u>Id.</u> In sum, the disclosure statement "should be clear and comprehensible and must clearly and succinctly inform the average unsecured creditor what distribution, if any, to expect." <u>Norton</u> § 91:5. Thus, the court will determine the adequacy of the information contained in a disclosure statement on a case-by-case, after taking into consideration the particular needs of each class of creditors or the needs of a class as a whole, not the needs of a particular creditor. <u>Norton</u> § 91:4.

    C.    <u>Plan issues may be considered at a hearing on approval of disclosure statement</u>.

    At the hearing on the approval of a disclosure statement, the court may consider issues pertaining to the plan and rule upon such issues when the plan defects will make it unconfirmable. *In re Felicity Associates, Inc.*, 197 B.R. 12, 14 (Bankr. D. Rhode Island 1996). Relevant issues pertaining to the plan are the classification of claims, an artificial classification of

- 8 -

a claim, whether the plan unfairly discriminates against a class of claims, and the solicitation procedure. *See In re Hillside Park Acts., L.P.*, 205 B.R. 177 (Bankr. W.D. Missouri 1997). Thus, it is within this court's discretion to address these issues prior to the confirmation of the plan, although a final determination need not be made at this time.

D.    Unfair discrimination of claims under 11 U.S.C. § 1123(a)(4).

Section 1123(a)(4) of the Bankruptcy Code provides that "a plan shall provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agree to a less favorable treatment of such particular claim or interest." The Bankruptcy Code nor its legislative history defines which are the standards of same or equal treatment of claims. Collier ¶ 1123.01[4]. "The prohibition against unfair discrimination requires equal treatment of similarly situated creditors." *In re Barney & Co.*, 170 B.R. 17, 25 (Bankr. D. Mass. 1994) (citing *Granada Wines, Inc.*, 748 F.2d 42 (1st Cir. 1984). Under the unfair discrimination test, the "differentiated treatment of similar classes intended merely to induce acceptance by one class fails." Id. (Citations omitted.) When a creditor objects to the classification of a particular class of claims, "[t]he burden is on the debtor to show that unequal treatment between classes having the same priority does not constitute unfair discrimination." Id.

E.    Disclosure Statement filed by Caribbean.

After considering Caribbean's disclosure statement and the argument presented by counsel at the hearing held on February 21, 2006, the court denies the approval of the disclosure statement because the proposed plan is unconfirmable due to the unfair discrimination on the proposed treatment to the unsecured deficiency claim of the Indenture Trustee. As stated above, section 1123(a)(4) of the Bankruptcy Code provides that the plan shall provide equal treatment to all the members of the same class. Caribbean's proposed plan classifies the general unsecured

-9-

claims in the same class with the general unsecured deficiency claim of the Indenture Trustee. Under the proposed plan, the holders of the deficiency claim will not receive a distribution, as opposed to the distribution provided for the general unsecured claims. Caribbean's proposed classification of the general unsecured deficiency claim is unfair and discriminatory, as it fails to comply with section 1122(a) of the Bankruptcy Code and it also fails to provide equal treatment to all the members of the same class as required by section 1123(a)(4) of the Code. The court also finds that Caribbean's disclosure statement describes the secured claim filed by the Indenture Trustee as unimpaired. Clearly, the claim is impaired as it will not be paid in full. 11 U.S.C. § 1124.

Caribbean admits that it does not have a license to operate the race track at this time, and that the continued business operation is contingent on this court's extension of the temporary injunction that was issued on behalf of the debtors under particular and limited circumstances. However, Caribbean is not a party to the temporary injunction. Irrespective of the status of Caribbean's license application, the operation of the race track by an authorized entity is a feasibility issue to be determined at confirmation.

There is no liquidation analysis. However, since the early stages of the bankruptcy proceedings it has been found as an uncontested fact that under any scenario presented to the court there is no equity in any of the debtors' assets, either individually or combined. Consequently, any feasible plan unquestionably will pay creditors more than they would receive under a Chapter 7 liquidation process.

The court also heard the objections by Camarero, although is not a creditor and may not vote on any plan. Camarero may have an interest in the case as a prospective purchaser, but that interest does not necessarily mean that it is a party in interest in the case.

The objection by Treasury is due to its perception that the description of its claim may

not indicate that its priority portion will be paid in full. The law requires that priority taxes be paid in full. Under Caribbean's proposed plan, any priority claim will be paid in full.

### Conclusion

In view of the foregoing, Caribbean's request for the approval of the disclosure statement is hereby denied because the proposed chapter 11 plan fails to comply with the requirements of 11 U.S.C. §§ 1123(a)(4), and is, thus, unconfirmable. Caribbean is hereby granted twenty (20) days to file an amended disclosure statement and plan.

SO ORDERED.

In San Juan, Puerto Rico, this 3rd day of March, 2006.

_____
ENRIQUE S. LAMOUTTE
U.S. Bankruptcy Judge

- 11 -