IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE:<br><br>EL COMANDANTE MANAGEMENT COMPANY, LLC, et al.,<br><br>Debtors. | CASE NO. 04-10938 (ESL)<br><br>CHAPTER 11<br><br>(Jointly Administered) |

## OPINION AND ORDER

This case is before the court upon the "Motion Under Fed.R.Civ.P. 60(b) And Request For Reconsideration Of The June 8, 2006 Opinion And Order" filed by the Hon. Juan Vaquer Castrodad ("Mr. Vaquer"), Executive Director of the Land Administration of Puerto Rico, in his personal capacity, on June 30, 2006 (Docket No. 1260). For the reasons set forth below, the motion is denied.

### Factual and Procedural Background

The facts relevant to the role of Mr. Vaquer in the instant bankruptcy case were detailed in this court's Opinion and Order of June 8, 2006 (Docket No. 1182). A short summary of said facts, however, is necessary to address the issue now pending before the court.

El Comandante Management Company, LLC ("ECMC"), Housing Development Associates, S.E. ("HDA"), and El Comandante Capital Corporation ("ECCC") (collectively the "debtors"), filed for bankruptcy under chapter 11 of the Bankruptcy Code on October 14, 2004. During the year 2005, Mr. Vaquer was appointed Executive Director of the Land Administration of the Commonwealth of Puerto Rico, and the Hon. Jorge Silva-Puras ("Mr. Silva-Puras") was appointed Secretary of the Department of Economic Development and Commerce of the Commonwealth of Puerto Rico.[1] In September 2005, Mr. Silva-Puras made several statements to the media regarding

---

[1] Reference is made to Mr. Silva-Puras, as his statements and actions concerning the government's possible taking of debtors' property are intertwined with those of Mr. Vaquer. Moreover, the arguments presented by Mr. Vaquer in his motion for reconsideration on the issue of qualified immunity, refer to and affect both Silva-Puras and Vaquer (Docket No. 1260). Mr. Silva-Puras is currently the Chief of Staff for the Governor of Puerto Rico.

the government's intention of taking the debtors' property, specifically the land where El Comandante horse racetrack is located. The statements made by Mr. Silva-Puras to the media triggered the "Urgent Motion For An Order To Show Cause" filed by debtors on September 20, 2005 (Docket No. 430). A status conference was held on November 8, 2005. The court directed the parties to file simultaneous statements within fifteen (15) days, describing (a) the actions taken by Messrs. Silva-Puras and Vaquer that represent a violation of the automatic stay; and, (b) what governmental actions, if any, have been taken to commence the eminent domain proceeding against debtors' property.

Messrs. Silva-Puras and Vaquer complied with the court's order of November 8, 2005, however, debtors' discovery was stalled by several motions requesting extension of time. Upon their failure to answer the discovery requests, the debtors filed a "Motion For Contempt For Violation 11 U.S.C. 362(A)" [sic], on May 2, 2006, against Messrs. Silva-Puras and Vaquer, for (a) failure to comply with the discovery requests; and, (b) trying to exercise control over debtors' property of the estates (Docket No. 1110). On that same date, Mr. Silva-Puras filed a "Motion To Dismiss Debtors' Motion To Show Cause And To Set Aside Pending Discovery" (Docket No. 1111), on the grounds of (a) lack of jurisdiction of the bankruptcy court, as an eminent domain action has not yet been filed; and, (b) qualified immunity. On May 16, 2006, debtors filed an opposition, supported with documentary evidence, setting forth the steps taken by Messrs. Silva-Puras and Vaquer directed to file an eminent domain action (Docket No. 1142). On June 8, 2006, the court entered an Opinion and Order (Docket No. 1182), denying Mr. Silva-Puras' motion to dismiss and his request for qualified immunity. Mr. Silva-Puras has appealed the June 8, 2006 Opinion and Order.

On May 3, 2006, Mr. Vaquer filed an "Opposition To Motion For Contempt For Violation

11 U.S.C. 362(A)" (Docket No. 1114), on the grounds that (a) there is no violation of stay, as an eminent domain action has not been filed; and, (b) Mr. Vaquer has complied with some discovery requests and was ready to continue with the discovery. On May 18, 2006, debtors filed a reply to Mr. Vaquer's opposition (Docket No. 1147).

On June 8, 2006, the court entered an Opinion and Order (Docket No. 1182) denying Mr. Vaquer's opposition to motion for contempt (Docket No. 1114). On June 30, 2006, Mr. Vaquer filed a "Motion Under Fed.R.Civ.P. 60(b) And Request For Reconsideration Of The June 8, 2006 Opinion And Order" (Docket No. 1260), on the grounds that (a) the Clerk failed to give proper notice of the June 8, 2006 Opinion and Order; and, (b) the court erred when it ruled that Mr. Vaquer is not entitled to qualified immunity. The court notes that, on July 10, 2006, Mr. Vaquer filed a "Motion For Leave To Appeal June 8, 2006 Opinion And Order" (Docket No. 1300); "Motion Requesting Extension Of Time To File Notice Of Appeal" (Docket No. 1301); and, a "Notice Of Appeal" (Docket No. 1302), in the event that this court denies Mr. Vaquer's motion for reconsideration. The question of proper notice of the June 8, 2006 Opinion and Order will be addressed separately when the court rules on Mr. Vaquer's "Motion Requesting Extension Of Time To File Notice Of Appeal," as this procedural issue is not related to the merits of the court's ruling on the non-applicability of the defense of qualified immunity, and has no bearing on this court's ruling on the motion for reconsideration pending before the court.

### Rule 60(b) Motion

Mr. Vaquer moves the court to vacate its June 8, 2006 order pursuant to Rule 60(b) of the Fed. R. Civ. P. on the grounds that the same was not properly notified. Mr. Vaquer also moves the court to reconsider its order denying the motion to dismiss filed by Mr. Silva-Puras on the grounds that both Mr. Vaquer and Mr. Silva-Puras are entitled to qualified immunity.

Even assuming that Mr. Vaquer is correct in his allegation that the June 8, 2006 order was not properly notified, the court fails to see how the extraordinary remedies in Rule 60(b) warrant that the order be set aside. *Caisse v. DuBois*, 346 F.3d 213 (1st Cir. 2003); *Karak v. Bursaw Oil Corp.*, 288 F. 3d 15,19 (1st Cir. 2002). The order was entered after considering the positions by all parties, including Mr. Vaquer. The order was not entered on default. However, the court will assume, in a liberal and broad perspective, that the standards of Rule 60(b) are being invoked because the motion was filed on June 30, 2006, that is, after ten days from the entry of the June 8, 2006 order. Whenever a party asks the court to modify an earlier disposition alleging legal error, the request must be brought under Fed. R. Civ. P. 59 (e). *U.S. v. $23,000 in U.S. Currency*, 356 F. 3d 157, fn. 9 (1st Cir. 2004). Requests under Rule 59 (e) must be brought within 10 days. The scenario having been set, the court will now address the request.

The court in its June 8, 2006 order denied two motions, the motion to dismiss filed by Mr. Silva-Puras and the opposition to motion for contempt filed by Mr. Vaquer. The court in its conclusion made specific reference to its disposition by stating that "the motion to dismiss filed by Mr. Siva-Puras (Docket No. 1111), and the opposition to motion for contempt filed by Mr. Vaquer (Docket No. 1114), in their personal capacity, are hereby denied." The motion by Mr. Siva-Puras addressed the issue of qualified immunity, the motion by Mr. Vaquer did not. The opposition by Mr. Vaquer alleged that debtors' request for damages for violating the automatic stay do not proceed because condemnation proceedings have not been filed, and also prayed that sanctions not be imposed for failure to comply with discovery. The court overruled both, but did not sanction Mr. Vaquer. Instead, it ordered respondents to comply with any pending discovery forthwith. Clearly,Mr. Vaquer has no standing to challenge this court's ruling as to Mr. Silva-Puras'request to dismiss claiming to be entitle to qualified immunity. Mr. Vaquer did not make the request.

- 4 -

In view of the above, the motion under Rule 60 (b) is denied.

To the extent that the motion may be construed as a motion to dismiss on the grounds that Mr. Vaquer is entitled to qualified immunity, the same is hereby denied for the reasons that follow, and which expand on this court's rationale in the June 8, 2006 order.

## Discussion

The issue before the court is whether the court erred when it ruled that Mr. Vaquer is not entitled to qualified immunity, on the ground that the application of one of the factors of the three (3) prong test "is flawed" (Docket No. 1260).

As stated in this court's Opinion and Order of June 8, 2006 (Docket No. 1182), the defense of qualified immunity is a "judge-made doctrine" geared to limit the personal liability of public officials in damages actions when exercising its discretionary functions in their governmental role. However, the defense of qualified immunity is far from being limitless or infinite. "As that exclusion has been interpreted, the doctrine does not shield public officials who, from an objective standpoint, should have known that their conduct was unlawful." *Pagán, et al. v. Calderón*, 448 F.3d 16, 31 (1st Cir. 2006).

When considering the three prong test followed in our circuit to determine whether a state officer is entitled to qualified immunity, the court must examine (a) "whether the plaintiff's allegations, if true, establish a constitutional violation;" (b) "whether the constitutional right at issue was clearly established at the time of the putative violation;" and, (c) "whether a reasonable officer, situated similarly to the defendant, would have understood the challenged act or omission to contravene the discerned constitutional right." *Calderón*, 448 F.3d at 31 (citations omitted).

Mr. Vaquer had moved the court to reconsider the court's ruling only as to the second prong of the test, that is, "whether the constitutional right at issue was clearly established at the time of the

- 5 -

putative violation." In the Opinion and Order of June 8, 2006 (Docket No. 1182), the court held:

> Debtors' right to file for bankruptcy was enacted by Congress over two hundred years ago, in 1776. Taking of property without just compensation and due process of law were enacted by Congress by the Fifth Amendment in 1791 and the Fourteenth Amendment in 1868. Thus, these constitutional rights were clearly established at the time of the facts alleged in the complaint."

Mr. Vaquer argues that the court's the application is "flawed" because:

> The controversy at bar is whether at the time of the adverse actions allegedly committed by appearing party and respondent Silva Puras, it was unlawful and in violation of the automatic stay to perform certain actions intended to "evaluate" whether an eminent domain proceeding should be "considered or contemplated" by government agencies in case a possible expropriation of El Comandante Racetrack was necessary. Thus, to defeat the qualified immunity defense, the debtors must show that Silva Puras and Vaquer Castrodad, the officials, knew or reasonably should have known that the actions they took within this sphere of official responsibility (consider or contemplate a possible expropriation) would violate the statutory rights (in this case, the automatic stay) of the debtor. (Docket No. 1260).

Mr. Vaquer also argues that a violation of stay requires "an overt act that exercises control over property of the estate." Mr. Vaquer alleges that "[t]he overt act in the instant case would have been the filing of a condemnation proceeding without first requesting relief from the automatic stay in the Bankruptcy Court." *See* Docket No.1260. We disagree.

The factors relied on by the court, as delineated in *Calderón,* to find that the doctrine of qualified immunity does not apply at this juncture, are well established in the First Circuit. See Cox v. Hainey, 391 F.3d 25, 29-30 (1st Cir. 2004), citing Saucier v. Katz, 533 U.S. 194, 201-206, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); Rivera-Jimenez v. Pierluisi, 362 F.3d 87, 93 (1st Cir. 2004); Mihos, 358 F.3d at 102; Limone v. Condon, 372 F.3d 39, 44 (1st Cir. 2004).

The doctrine of qualified immunity provides that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct

- 6 -

does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Mihos v. Swift, 358 F.3d 91, 101 (1st Cir. 2004), quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The doctrine "aspires to 'balance [the] desire to compensate those whose rights are infringed by state actors with an equally compelling desire to shield public servants from undue interference with the performance of their duties and from threats of liability which, though unfounded, may nevertheless be unbearably disruptive.'" Cox v. Hainey, 391 F.3d 25, 29 (1st Cir. 2004), citing Buenrostro v. Collazo, 973 F.2d 39, 42 (1st Cir. 1992). Qualified immunity "protects public officials from the specter of damages liability for judgment calls made in a legally uncertain environment." Santana v. Calderon, 342 F.3d 18, 23 (1st Cir. 2003), quoting Ryder v. United States, 515 U.S. 177, 185, 115 S. Ct. 2031, 132 L.Ed.2d 136 (1995). Qualified immunity is not only a defense to liability but "an entitlement not to stand trial or face the other burdens of litigation." Cox, 391 F.3d at 29, citing Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 3806, 86 L.Ed.2d 411 (1985).

In order for plaintiffs to overcome a qualified immunity defense they must prove that their allegations, if true, show a constitutional violation of a clearly established right and that a reasonable official would have known that his actions violated the right at issue. Mihos, 358 F.3d at 98.

In determining whether the allegations establish a constitutional violation, the court should examine whether the facts as alleged make out a constitutional violation. Mihos, 358 F.3d at 102. This factor "should be treated as a 'threshold question' and "operates at a high level of generality." Cox, 391 F.3d at 30 (citations omitted) (wherein the court of appeals concluded that "the undisputed facts, construed in the light most favorable to the appellant, make out a colorable claim of constitutional dimension.") The debtors herein allege that the government has made expressions through Messrs. Silva Puras and Vaquer regarding the possibility of expropriating debtors' real

-7-

estate. In its opinion and order the court stated that:

> Debtors' allegations are supported with several letters from Messrs. Silva-Puras and Vaquer, including a letter from Mr. Vaquer to Mr. William Lockwood, President to the Government Development Bank of Puerto Rico, dated August 18, 2005, requesting a loan to compensate the owners of the racetrack when the eminent domain action is filed. The letters included in debtors' response expressly acknowledge that the owners of the land to be expropriated are under the protection of the bankruptcy court, and that the actions to expropriate are aimed at protecting the horse racing industry. See Docket No. 1151.

The court finds that these facts, as alleged, may constitute a violation of the debtors' rights and therefore the first part of the qualified immunity test is established.

The second part of the test examines whether the right claimed was clearly established at the time of the alleged violation. As to this point, "the Supreme Court has cautioned against applying general definitions of constitutional rights in the qualified immunity context" because "[t]he level of abstractness at which the 'right' in question is articulated can often determine the outcome of [the] inquiry." Mihos, 358 F.3d at 109. This court concludes that at the time of the alleged violation herein, the right of a citizen to not have their property taken without due process of law and the automatic stay provisions of 11 U.S.C. § 362(a) were clearly established.

The third step in the qualified immunity analysis requires the court to analyze "whether an objectively reasonable officer in the defendant's position would have understood [his] action to violate the plaintiff's rights." Mihos, 358 F.3d at 110 (citation omitted). For its purposes, "the operative inquiry is not whether the defendant's actions actually abridged some constitutional right, but, rather, whether those actions were obviously inconsistent with that right." Cox, 391 F.3d at 31 (citations omitted). Thus, the doctrine of qualified immunity "draws a line that separates unconstitutional but objectively reasonable acts from obviously unconstitutional acts" and said line "provides ample protection to all but the plainly incompetent or those who knowingly violate the

- 8 -

law." Cox, 391 F.3d at 31 (citations omitted).

In *Sayre v. the U.S.A. and the City of Cleveland*, 282 F.Supp. 175, 185 (N.D. Ohio 1967), the court held that the government's mere abuse of its eminent domain power would constitute a taking of property.

> **An abuse of the exercise of the power of eminent domain would constitute a taking of property without just compensation if that abuse directly and proximately contributes to, hastens, and aggravates, acting alone or in combination with other causes, the deterioration and decline in value of the area and the subject property.** (Emphasis supplied.)

In *Sayre, supra* at 184-185, there was no physical invasion of the properties by the government. However, the City of Cleveland sidelined the services provided to the area where Sayre's property was located, resulting in a decrease of value of Sayre's assets. The court held:

> Yet, without being absolutely taken, a taking of property may occur 'if the action by the government involves a direct interference with or disturbance of property rights.' (Citing *R.J. Wilden Co. v. United States*, 357 F.2d 988, 174 Ct.Cl. 1020 (1966).

> . . .

> Nevertheless, a government's intention to take property is deemed essential to constitute a taking of private property. In construing and applying the requirement of the fifth amendment that private property shall not be taken for public use without just compensation (equally applicable to the due process clause of the fourteenth amendment) the Court of Claims hold, as reaffirmed in *Biggs Rental Co. v. United States*, 353 F.2d 1013, at 1017, 173 Ct.Cl. 789 (1965).

> . . .

> To constitute a taking there must be an intent on the part of the United States to take plaintiff's properties, or, at least an intention to do an act the natural consequences of which was to take property.

See also, *R.J. Widen Company v. The United States and Commonwealth of Massachusetts*, 357 F.2d 988, 993 (Ct.Cl. 1966). In *Widen*, the court held:

-9-

[T]o constitute a taking under the Fifth Amendment it is not necessary that property be absolutely 'taken' in the narrow sense of that word to come within the protection of this constitutional provision; it is sufficient if the action by the government involves a direct interference with or disturbance of property rights. (Citations omitted.)  Nor need the government directly appropriate the title, possession or use of the properties in question since it is the deprivation of the former owner rather that the accretion of a right or interest to the sovereign (which) constitutes the taking.

In *In re Atamian*, 344 B.R. 200, 204-205 (Bankr. D. Mass. 2006), the court recited Congress' intent when enacting section 362(a) of the Bankruptcy Code:

Section 362(a) which provides the automatic stay, is acknowledged to be 'one of the fundamental debtor protections provided by the bankruptcy laws.'   S.Rep. No. 95-9989, p. 54 (1978); H.R.Rep. No. 95-595, p. 340 (1977), U.S. Code Cong. & Admin. News 1978, pp. 5787, 5840, 5963, 6296. It gives debtors 'breathing room by stop[ping] all collection efforts, **all harassment**, and all foreclosure actions.' *Soares v. Brockton Credit Union (In re Soares)*, 107 F.3d 969, 975 (1st Cir. 1997) (quoting H.R.Rep. No. 95-595 at 340 [1977], reprinted in 1978 U.S.C.C.A.N. 5963, 6296-97).  It permits an orderly administration of the estate thus safeguarding the rights of all creditors.  *Id.*  Consequently courts 'must display a certain rigor in reacting to violations of the automatic stay.'  *Id.* at 975-76.

In the instant case, Mr. Vaquer failed to submit new evidence to show that the government did not have the intention to take debtors' estates, nor how the actions taken by Messrs. Silva-Puras and Vaquer, including the alleged and supported statements or threats of the taking of El Comandante horse racetrack, will not adversely affect or decrease the value of debtors' estates.

The allegations in debtors' motion and the documents in support thereof that have been presented to the court show that Messrs. Silva-Puras and Vaquer had the intention to move forward with the taking of El Comandante horse racetrack.  This court finds that an objectively reasonable government official should understand that, upon deciding whether or not to make public expressions and take steps concerning the expropriation of property under the jurisdiction of the

- 10 -

bankruptcy court, such actions may constitute a taking of that citizen's property in violation of their constitutional rights without due process of law.

The court is not persuaded by Mr. Vaquer's arguments that mere contemplation, by itself, does not constitute a violation of stay, in light of the allegations in debtors' motion, as well as the documents in support thereof, which the court is constrained to accept as true when deciding whether or not to dismiss the motion. However, the denial of qualified immunity to a defendant does not mean a victory for the plaintiff on the merits; it simply means that the case may go forward. Id. at 99. The "clearly established rights" standard makes the defense of qualified immunity a difficult basis for a motion to dismiss. Walton v. Watts, 185 B.R. 963, 969 n. 5 (N.D. Ga. 1995).

As stated by the court in its order:

> The issue is fact intensive and hinges on the actual parameters encompassing the "contemplation" of the eminent domain action, the underlying reasons for any actions, and the legal basis upon which the actions were taken. Acts or statements directed to the government's taking of debtors' property by an eminent domain action, may, under certain circumstances, constitute a violation of the automatic stay, as the consequences may be detrimental to debtors' reorganization and to the value of the estates. The documents in support of debtors' allegations show that the government, through its officers (Silva-Puras and Vaquer) was not just "contemplating" the idea of taking debtors' property, but it has taken affirmative steps to pursue an eminent domain action while the automatic stay is in effect. Whether the actions taken are a valid exercise of the government's police power through an eminent domain action or a violation of the automatic stay must be decided in light of the particular facts and circumstances of this case. At this stage, the court is constrained to accept as true the allegations in the debtors' motions and to draw all reasonable inferences in their favor.

## Conclusion

In view of the foregoing, the motion for reconsideration filed by Mr. Juan Vaquer Castrodad (Docket No. 1260), is hereby denied.

- 11 -

SO ORDERED.

In San Juan, Puerto Rico, this _10th_ day of August, 2006.

_____
ENRIQUE S. LAMOUTTE
U.S. Bankruptcy Judge

- 12 -