IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:

EL COMANDANTE MANAGEMENT
COMPANY, LLC, et al.,

Debtors.

CASE NO. 04-10938 (ESL)

CHAPTER 11

(Jointly Administered)

## OPINION AND ORDER

This case came before the court on October 26, 27 and November 9, 2006, for a hearing to consider the confirmation of the Third Amended Joint Plan of Reorganization dated August 2, 2006, filed by Wells Fargo Bank, National Association, as the Indenture Trustee, on October 13, 2006 ("the Secured Creditor Plan") (Docket No. 1878), as subsequently supplemented (Docket No.1921). The following objections to the confirmation of the Creditor Plan were filed and heard: the Official Unsecured Creditors' Committee's Objection To Confirmation Of Indenture Trustee's Third Amended Joint Plan Of Reorganization (Docket No. 1939); Treasury Department's Objection To Confirmation Of Third Amended Joint Plan Of Reorganization Proposed By Wells Fargo Bank, National Association (Docket No. 1945); Debtors' Objection To 1129 Statement Of Indenture Trustee's Third Amended Plan Of Reorganization, as supplemented, (Docket Nos 1948, 2114); Objection to Wells Fargo's plan filed by Caribbean Thoroughbred Racing Company, Inc. ("Caribbean") (Docket Nos. 1772,1935); and the Objection To Confirmation Of Indenture Trustee's Third Amended Joint Plan Of Reorganization filed by Puerto Rico Horse Race Track, Inc. ("PRHRT") (Docket No. 1943). The court also heard the Horse Racing Administrator's position (Dkt. No. 1941); and Wells Fargo's Omnibus reply to objections to confirmation.

### Jurisdiction

This court has jurisdiction to entertain the Indenture Trustee's request to confirm the

proposed Secured Creditor Plan, pursuant to 28 U.S.C. §§ 1334 and 157. This is a core proceeding under 28 U.S.C. § 157(b)(2)(L), and venue of debtors' jointly administered cases is proper in the District of Puerto Rico, pursuant to 28 U.S.C. § 1408(a), and the Order entered by the United States Bankruptcy Court for the District of Delaware, on October 22, 2004, wherein venue was transferred to this District, pursuant to 28 U.S.C. § 1412 (Docket No. 42).

### Factual and Procedural Background

On October 15, 2004, El Comandante Management Company, LLC ("ECMC"), Housing Development Associates, SE ("HDA"), and El Comandante Capital Corp. ("ECCC") (collectively the "debtors"), filed three separate petitions under Chapter 11 of the Bankruptcy Code before the United States Bankruptcy Court for the District of Delaware. On October 20, 2004, debtors moved the court to allow the joint administration and procedural consolidation of the three separate petitions (Docket No. 8). Debtors' request for a joint administration and procedural consolidation was granted by the court on October 22, 2004 (Docket No. 36). Upon the request of the Treasury Department of the Commonwealth of Puerto Rico, and the Horse Racing Administrator of the Puerto Rico Horse Racing Industry and Sport Administration, on October 22, 2004 the Delaware Bankruptcy Court granted the transfer of venue to the United States Bankruptcy Court for the District of Puerto Rico (Docket No. 42).

On April 17, 2006, the court entered an order (Dkt. No. 1070) denying the creditor plan dated November 23, 2005 (Dkt. No. 554), on the grounds that the plan proponent had failed to present reliable evidence to show that the solicitation packages were sent to the beneficial holders of the bonds with sufficient advance time to cast an intelligent vote, and to show that the beneficial owners actually voted to accept the plan. The order is pending an appeal to the U.S. District Court.

The court will address in this order the contested issues as they were presented to the court

-2-

in the motions and hearings concerning the August 2, 2006 plan. However, the conclusions in the order entered on April 17, 2006 (Dkt. no. 1070) are suppletory to the ones in this order, to the extent that they are not inconsistent.

The Third Amended Plan dated August 2, 2006, now proposed by the Indenture Trustee is substantially similar to the November 23, 2005 plan initially submitted for confirmation. The main difference is that the amounts have been increased as a result of Camarero having increased the purchase price to $73 million.

On August 4, 2006, the court entered a Joint Solicitation Procedures Order for all three plans, that is, the secured creditor plan, the debtors' plan and Caribbean's plan (Dkt. No. 1441). The Altman Group was named as the Balloting Agent.

### The Creditor Plan

The Secured Creditor Plan is premised on the sale of debtors' assets upon confirmation of the proposed plan,[1] pursuant to the terms of the Asset Purchase Agreement. The closing of the Asset Purchase Agreement will culminate the auction proceedings held by the Indenture Trustee on December 30, 2005, wherein the winning bidder agreed to purchase the debtors' assets for the amount of $64 million. The winning bidder is Camarero Race Track, Corp. ("Camarero") who offered $64 million to purchase the assets, in spite of Caribbean's bid for $67 million (Docket No. 703).[2] The purchase price has been increased to $73 million.

---

[1]    The Secured Creditor Plan, as amended, was not submitted into evidence by the Indenture Trustee, notwithstanding the objections of the Official Unsecured Creditors' Committee (the "Committee"), the debtors, Caribbean, and PRHRT. Notwithstanding, the court is considering the same as it was duly notified and considered by the parties opposing confirmation.

[2]    The Indenture Trustee informed that the auction was adjudicated to Camarero because Camarero at the time had a license to operate the race track, as opposed to Caribbean that offered a higher bid but lacked a license. At this time Camarero does not hold a permanent license to operate the El Comandante racetrack. The secured creditor plan, as well as the other competing liquidation

- 3 -

The Secured Creditor Plan will be funded from the proceeds of the sale to Camarero, that is, $73 million. Thus, the amount available for distribution to all creditors on the effective date of the Creditor Plan will be $73 million. The amount owed to the bondholders, as claimed by the Indenture Trustee, exceeds the amount of $89 million. The Secured Creditor Plan does not provide for the full payment of the secured portion of the bondholders' claim, nor for their unsecured deficiency claim. The Indenture Trustee classified the bondholders' unsecured deficiency claim in the same class with the general unsecured claims.

## Applicable Law and Discussion

Section 1128(a) of the Bankruptcy Code requires that an actual hearing on confirmation of a plan be held. Section 1128(b) of the Code provides that any party in interest may object to the confirmation of a plan. Section 1109(b) of the Code provides a nonexclusive definition of party in interest.[3] A party may object to the treatment of its claim under a proposed plan, regardless of whether the claim is impaired or unimpaired. "An impaired creditor, for example, always has standing to object to its treatment under the best interest of creditors' test. Even if the plan declares a certain creditor to be unimpaired, that creditor should have standing to contest that categorization." *Collier on Bankruptcy*, ¶ 1129.02[3].

In the instant case, the confirmation hearing on the Secured Creditor Plan was held on October 26, 27 and November 9, 2006, after due notice to all creditors and parties in interest. The objections to confirmation of the Secured Creditor Plan were also heard on the same dates.

---

plans do not require a license as a condition precedent to purchase the debtors' assets.

[3] 11 U.S.C. § 1109(b) provides that: "A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter."

Section 1129 of the Bankruptcy Code governs the requirements for confirmation of a proposed chapter 11 plan. Section 1129(a) specifically provides that a plan shall be confirmed only if all the requirements are met. The proponent of a plan has the burden of showing that the plan complies with all the requirements of section 1129(a) of the Code. If all classes do not accept the plan, then it is a non consensual plan, and the proponent must show that the plan meets the requirements of section 1129(a), other than section 1129(a)(8), and section 1129(b). "In either situation, the plan proponent bears the burden of proof by a preponderance of the evidence." 7 Lawrence P. King, *Collier on Bankruptcy*, ¶ 1129.02[4], 15th Revised Edition 2005.

The Secured Creditor Plan has to meet the requirements of Section 1129(b) because the interest holders, that is, the members of Class 5 in HDA, Class 4 in ECCC, and class 5 in ECMC, are deemed to have rejected the plan because they will not receive a distribution under the secured creditor plan.

### Requirements of 11 U.S.C. § 1129(a)

1. Section 1129(a)(1) requires that the plan complies with all applicable provisions of the Bankruptcy Code. The debtors and PRHRT allege that the plan fails to meet the requirements of 1129(a)(1) because it fails to comply with section 1123(a) by improperly classifying priority claims as unimpaired when the same will not be paid in full. However, the plan does pay all priorities in full and reserves are and will be carved out of the noteholders' secured claim to make the payment. Debtors and PRHRT also state that the plan fails to meet section 365 regarding the assumption of leases. The objection has no basis as the Indenture Trustee did move the court for the assumption of leases on October 20, 2006 (Dkt. No. 1937).

PRHRT also objects to the releases contemplated in the §§ 5.8-5.11 of the secured creditor plan. This issue will be discussed separately.

- 5 -

2. Section 1129(a)(2) requires that the proponent of the plan complies with the applicable provisions of the Code. The disclosure and solicitation requirements are not challenged and the court finds that they have been fully met.    The present scenario differs markedly from the one before the court during the hearings on confirmation of the November 23, 2005 plan. The beneficial holders that appeared in writing and at the confirmation hearing of the November 23, 2005 plan expressly opposed the adequacy of the notice as not providing a meaningful opportunity to review the plan and vote, and questioned the voting for a plan that may not produce sufficient funds in light of the value of the property. The beneficial holders of the notes that have now appeared concerning the confirmation of the August 2, 2006 plan support the Secured Creditor Plan and reject the plans by the debtors and Caribbean.

3. Section 1129(a)(3) requires that the plan be proposed in good faith and not by means forbidden by law. A "good faith plan" is "one which complies with and satisfies the goal of reorganization." *Collier on Bankruptcy,* ¶ 1129.03[3][a][ii] "Section 1129(a)(3) speaks only to the proposal of a plan and does not address acceptance of such plan. Bad faith in the solicitation process seems to have been given over to section 1126(e) which recognizes the possibility of a bad faith acceptance." Id. The plan must be viewed in light of the totality of the circumstances. *Collier on Bankruptcy,* ¶ 1129.03[3][a][iii][A]. Good faith has been interpreted to mean "a reasonable likelihood that the plan will achieve a result consistent with the objectives and purposes of the Bankruptcy Code." In re Madison Hotel Associates, 749 F.2d 410 (7th Cir. 1984).

The debtors, Caribbean, and the Unsecured Creditors' Committee state that the secured creditor plan is not proposed in good faith, essentially because the other two other plans allegedly pay more to the creditors. Assuming that the assertion is true, such a fact would be relevant if this court is faced with having to determine which plan to confirm under section 1129(c), if there

- 6 -

are two or more confirmable plans. We are not at such a stage. The debtors' plan was found not confirmable because it was not duly accepted by an impaired class, and the court has yet to find that Caribbean's plan is confirmable. Should the court find that both the secured creditor plan and Caribbean's plan meet the requirements of section 1129(b), then a hearing pursuant to 1129(c) may be scheduled. Such was the bifurcated procedure discussed and agreed upon during the confirmation hearings.

The debtors also question the good faith of the secured creditor plan under the premise that the offer made by Camarero pursuant to the asset purchase agreement ($73 million) is less than the market value of the property, now estimated at $75 by the debtors. Whether the value is $73 million or $75 million, the assets of the debtors would still lack equity in view of the secured claim by the Indenture Trustee in the uncontested amount of $89 million. Also, on August 29, 2006, after due notice and a hearing, the court entered an order in Adversary Proceeding No. 06-0056(Dkt. No 1595 in the bankruptcy case) finding that the "[r]eal property of all Debtors collectively, currently, has a fair market value, assuming debtor ECMC is operating, of between $63,300,000 to 69,600,000." The finding was an agreed upon after considering the reports by expert witnesses. Therefore, to argue lack of good faith, at this juncture , for a difference in the alleged value of the property is without basis.

Consequently, the court finds that the plan is proposed in good faith.

4. Debtors and Caribbean allege that the disclosure requirements of Section 1129(a)(4) have not been complied with because the costs and expenses in connection with the secured creditor plan have not been disclosed nor approved by the court. Section 1129(a)(4) requires the disclosure of any payment made or promised by the plan proponent for services and expenses in connection with the case. The Indenture Trustee alleges that the provision is applicable only

when the estate funds are used. The court finds that the disclosure requirements also apply to plan proponents who are not the debtor or the creditors' committee, although the level of scrutiny may be less stringent. However, in this case the Indenture Trustee amended the plan to comply with this provision (Dkt. No. 962), and provided adequate disclosure by requesting that all professionals submit a statement of all fees, approved and/or estimated. The following section was added to the secured creditor plan: "Any payment made or to be made by the Indenture Trustee for services or for costs and expenses in connection with the Bankruptcy Case, or in connection with the Creditor Plan and incident to the Bankruptcy Case, will be subject to the approval of the Court as reasonable." Therefore, the disclosure requirements were met.

Although the disclosure requirements are met, there is pending the issue as to whether or not this court should pass upon their reasonableness. A future determination by this court on the reasonableness of the expenses incurred by the Indenture Trustee will not bar confirmation of the secured creditor plan. The amounts to be paid to the Indenture Trustee for costs and expenses related to these cases affect the Indenture Trustee and the Noteholders, it will not affect the plan proponents nor other creditors.

In view of the above, the Indenture Trustee shall move the court within twenty days from the date its plan is confirmed for a determination of the reasonableness of costs and expenses related to these jointly administered cases.

5. Section 1129(a)(5) requires disclosure and approval of the postconfirmation management of the revested debtor. The court finds that, since the debtors' assets will be sold to a new entity, the information disclosed by the Indenture Trustee as to the new entity, Camarero, and its financial resources and license requirements, is sufficient to meet the requirements of section 1129(a)(5). Moreover, the Secured Creditor Plan provides for the creation of the

- 8 -

Litigation Trust, which will operate the business during the transitional period. Upon the court approval of the Litigation Trust Agreement, Mr. Don Drew will be appointed as plan administrator, and Mr. Wigberto Lugo will be appointed as trustee to manage the Litigation Trust. The Litigation Trust Agreement also provides the compensation to be paid to both the plan administrator and the trustee. Thus, the required disclosures were made and are only subject to approval upon the entry of a confirmation order.

6. Section 1129(a)(6) requires that "[a]ny governmental regulatory commission with jurisdiction, after confirmation of the plan, over the rates of the debtor has approved any rate change provided for in the plan, or such rate change is expressly conditioned on such approval." The court finds that this requirement does not apply to the Creditor Plan as the income to fund the same comes from the sale of debtors' assets.

7. The Creditors Committee argues that the Creditor Plan fails to meet the best interests of creditors requirements of Section 1129(a)(7) because it was not demonstrated that the unsecured creditors of ECMC will receive more than they would receive in a Chapter 7 liquidation. The evidence presented satisfies the court that should all the debtors' assets be liquidated, unsecured creditors will not receive a distribution, and that even if there are any unencumbered assets in ECMC's estate, any distribution will be *de minimis,* considering the combined value of debtors' estates. The value of the combined assets of the debtors does not exceed $70 million dollars and the secured claim of the Indenture Trustee is in the amount of $89 million. Therefore, the Indenture Trustee is an undersecured creditor and there is no equity in debtors' estates.

8. The requirements of section 1129(a)(8) have, admittedly, not been met because there is a class in each of the three plans that are deemed to reject the plan. Therefore, the

requirements in section 1129(b) must be satisfied.

9. The Treasury Department of the Commonwealth of Puerto Rico (" Treasury") opposed the Creditor's Plan's confirmation because the plan fails to pay its priority claim as filed and as deemed allowed. Section 1129(a)(9) establishes a system of priorities for unsecured claims, including administrative expenses and priority claims. The Indenture Trustee clarified, to the court's satisfaction, that the amounts carved out for the payment of administrative and priority claims will be adjusted, at the bondholders' expense, to pay these claims in full. Moreover, the Treasury Department has now settled its claim with the Indenture Trustee and Camarero. See dkt. nos. 2122 and 2169. Therefore, the court finds that Treasury's concerns under 1129(a)(9) have been met.

10. Section 1129(a)(10) requires the acceptance of the plan by at least one class of impaired creditors. The plan proponent in this case is the Indenture Trustee, in representation of the bondholders. The Indenture Trustee may propose a plan but may not vote to accept or reject the same. The beneficial owners of the bonds are the real parties in interest that may vote on the plan. The beneficial owners are in two classes, as undersecured creditors and as general unsecured creditors. Their votes have carried the acceptance of the plan in both classes.

11. Section 1129(a)(11) requires that the proposed plan be feasible and that "[i]t is not likely to be followed by the liquidation, or the need of further financial reorganization of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan." The Creditor Plan provides that, upon confirmation of the plan, the funds paid by Camarero ($73 million) pursuant to the Asset Purchase Agreement will be disbursed to the Indenture Trustee and, in turn, to the creditors according to the plan provisions. The Indenture Trustee submitted into evidence the testimony of Mr. Felipe Lebrón, Vice President of

the Corporate Division of FirstBank, to show that Camarero will have the necessary financial resources to purchase the assets within twenty-four (24) hours from confirmation of the Secured Creditor Plan. The financial commitment to Camarero and its shareholders in the amount of $73 million does not require a license as a condition precedent to the disbursement of funds. The disbursement is only subject to the entry of a confirmation order.

In view of the above, the court finds that the plan proponent met its burden to show that the plan is feasible.

12. The requirements of section 1129(a)(12) regarding the payment of fees is not questioned or opposed. Therefore, the court finds that the requirements are met.

13. Section 1129(a)(13) requires that the plan provides for the continuation of retiree benefits as the term is defined in section 1114 of the Bankruptcy Code. Section 1114(a) defines retiree benefits as "payments to any entity or person for the purpose of providing or reimbursing payments for retired employees and their spouses and dependents, for medical, surgical, or hospital care benefits, or benefits in the event of sickness, accident, disability, or death under any plan, fund or program (through the purchase of insurance or otherwise) maintained or established in whole or in part by the debtor prior to filing a petition commencing a case under this title." The debtors did not establish an employee retirement plan. Also, 401k plans and Individual Retirement Accounts (IRAs) are not the health and life retirement benefits envisioned by Section 1114. Therefore, section 1129(a)(13) is not applicable to the Secured Creditor Plan.

**Section 1129(b)**

Pursuant to Section 1129(b) a plan may be confirmed if all the requirements of 1129(a) are met, except 1129(a)(8), "if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the

plan." There is no evidence before the court to find that similarly situated claims in a class will receive a disparate treatment. Likewise, no evidence was presented to show that a junior class will receive a dividend ahead of a rejecting class. Also, there is no equity in the debtors' estates based on the stipulated value of the assets. Therefore, the plan meets the fair and equitable test.

**Releases and Injunctions**

The secured creditor plan proposed by the Indenture Trustee is one of three competing plans that came before the court for a hearing on confirmation. The secured creditor plan (as well as the competing plans) is a liquidation plan. The principal source of the funds to pay creditors upon entry of a confirmation order, including the Indenture Trustee, is an Asset Purchase Agreement with Camarero. There are two additional sources of funds, an Earn Out Trust that may generate funds from the future and eventual operation of video game machines when and if the same are duly authorized by applicable state law and regulations, and a Litigation Trust. The amounts that may be recovered and paid to creditors from these two additional sources are uncertain at this time.

The secured creditor plan includes in paragraphs 5.8 to 5.11 releases and injunctions which "are integral parts of the plan and are necessary to confirm the plan," (Par. 5.8) Paragraph 17.10 of the secured creditor plan, Severability of Plan Provisions, allows the Indenture Trustee to waive any provision of the plan that the court may find to be invalid, void or unenforceable. PRHRT has objected to the release and injunction provisions in the secured creditor plan. The release and injunction provisions state as follows:

> 5.8 Consideration for Release and Injunction. As a result of its Allowed Secured Claim against all of the Debtors and its Allowed Administrative Expense Claim against Debtor ECMC, the Indenture Trustee and the Noteholders are entitled to receive, among other things, all Cash of the Debtors on the Effective Date. Under the Plan, however, the Indenture Trustee is permitting Cash to be utilized for the purposes of, among other

things, funding the Combined Reserve Amount and the Litigation Trust Funding Amount. Pursuant to section 1123(b)(3)(A) of the Bankruptcy Code, the Plan constitutes an application for approval of a compromise and settlement of any and all claims and causes of action of the Debtors, the Estates, each holder of a Claim against or Interest in the Debtors, or either of them, all Persons having a past or present relationship with the Debtors, and their respective officers, directors, shareholders, noteholders, representatives, agents, servants, employees, successors, predecessors, assigns, and anyone claiming a right in a derivative capacity on their behalf (the "Releasors") against the Released Parties (as defined below) in exchange for the above consideration. The releases and injunctions granted in favor of the Released Parties are integral parts of the Plan and are necessary to confirm the Plan.

5.9 Release. On the Effective Date, the Releasors hereby unconditionally and irrevocably release the Indenture Trustee, Holders of the Notes (other than Notes owned or held by ECMC), the members of the Advisory Noteholders Committee and Wells Fargo, and their present and former parent corporations and direct and indirect subsidiaries or affiliates, together with each of their present and former shareholders, present and former officers, directors, and employees, present or former attorneys, present and former advisors or consultants retained by attorneys for the Indenture Trustee, Holders of the Notes (other than Notes owned or held by ECMC), the members of the predecessors, successors and assigns of all or any of them (in their capacities as such and in their individual capacity the "Released Parties") from any and all direct, indirect or derivative claims, obligations, suits, judgments, damages, rights, causes of action, liabilities, claims compensation received, or rights of contribution and indemnification, and all other controversies of every type, kind, nature, description or character whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part upon any act or omission, transaction, event or other occurrence taking place from the beginning of the world to the Effective Date arising from or relating in any way, directly or indirectly, to the Debtors, the Cases, the Loan Documents, the Plan or the Disclosure Statement, and any duties or functions performed by any Released Party under the Loan Documents and the Plan. The Confirmation Order shall specifically provide for the foregoing release and shall enjoin the prosecution of any such released claim cause of action or liability.

5.10 Injunction and Bars Against Claims. Except as otherwise expressly provided in the Plan or the Confirmation Order all Persons who have held, hold, or may hold Claims against the Debtors, or who have held, hold or may hold Claims against the Debtors, or who have held, hold

or may hold any Debtor security or interest are permanently enjoined from and after the Effective Date, to the maximum extent permitted by law, from (a) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim or Interest against the Released Parties or (b) enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree or order against the immediate or any mediate transferee of any property distributed pursuant to the Plan, of any putative securities based upon a claim that the transferor's receipt of such property constituted a fraudulent conveyance, preference, violation of bulk sales or other law, or based upon any other claim that receipt and/or distribution of property by transfer pursuant to the Plan is wrongful, whether in law or equity.

5.11 <u>Intent of Injunction.</u>  The intent of Section 5.10 herein is to provide the broadest possible injunction permitted by law, to expend the scope of that injunction for the benefit of the Released Parties to the extent that, at any time after the Effective Date, the law is clarified or changed to permit such a broader injunction.  The injunction in the Confirmation Order shall provide that the Holders of Claims and Interests shall be enjoined from commencing or continuing any such specified action or proceeding against the Released Parties with respect of any Claim arising out of or relating to the Debtors and their property.

The above cited paragraphs provide releases to the Indenture Trustee, the holders of the notes (other than the notes held by debtor ECMC), the members of the Advisory Noteholders Committee[4], and Wells Fargo, and their present and former parent corporations and direct and indirect subsidiaries or affiliates, together with each and their present and former shareholders, present and former officers, directors, and employees, present or former attorneys, present and former advisors or consultants; from any action known, foreseen or unforeseen, matured or unmatured, from the beginning of the world to the effective date of the plan.  The intent of the injunction is to provide the broadest possible injunction provided by law.  Clearly, the release and injunction provisions are as broad as may be construed under the circumstances.  The critical issue is whether the broad release and injunction provisions in favor of non debtors and non creditors are permitted by law.

The bankruptcy court's subject matter jurisdiction to enter an order releasing the Indenture Trustee from claims that may not have any relation to the estate or the debtors has been questioned.  <u>Gillman, et al. v. Continental Airlines, et al. (In re Continental Airlines)</u>, 203 F. 3d

---

[4]The members of this committee, or the actions they may have taken in relation to the debtors and the confirmation of the secured creditor plan have not been disclosed.

- 14 -

203, 214, fn 12 (3d Cir. 2000); In re Adley, 333 B.R. 587, 613 (Bankr. D. Mass. 2005). However, the issue must be addressed by the court at this juncture as parties may be subsequently barred from attacking the confirmation order. Monarch Life Ins. Co. v. Ropes & Gray, 65 F.3d 973, 983-984 (1st. Cir 1995) (Monarch Life). A confirmation order which, according to the terms of the secured creditor plan, must conform to the one proposed by the Indenture Trustee, unless waived by the Indenture Trustee.[5] The releases in the secured creditor plan only benefit the Indenture Trustee and anyone related to it from the beginning of the world to the effective date of the confirmed plan. An order confirming the plan, including the releases and injunction, will bar any party to challenge a release and injunction in a subsequent action on account of the issue preclusion doctrine.

The First Circuit has not specifically ruled on the validity of third party and non debtor releases. In Monarch Life the First Circuit discussed the circuit split but did not rule on it. The court did not reverse the third party injunction in the confirmation order. However, the decision rested on issue preclusion grounds. The courts have allowed third party and non debtor releases based on their equitable powers under section 105(a) of the Bankruptcy Code. The First Circuit has specifically cautioned on using section 105(a) as a basis to enjoin a non-debtor third party as it involves an extraordinary exercise of discretion. In re G.S.F. Corp., 938 F.2d 1467, 1474 (1st. Cir. 1991).

In In re M.J.H. Leasing Inc., 328 B.R. 363 (Bankr. D. Mass 2005), Judge Hillman found authority to issue non debtor releases after considering and weighing the factors articulated in In

---

[5]On November 5, 2006, the Indenture Trustee submitted a draft order confirming the third amended secured creditor plan dated August 2, 2006 (Dkt. no. 2043). No objections to the same have been filed by parties in interest. After reviewing the same and consistent with this opinion and order, the court will modify two sections. First, in paragraph 11, the court will except from the injunctions the provisions in paragraphs 5.8 to 5.11 of the plan. Second, in paragraph 22, it will add, at the end " ..., that is, 28 U.S.C. §§ 157, 1334."

re Master Mortgage Investment Fund, Inc., 168 B.R. 930, 935 (Bankr. W.D. Mo. 1994) (Master Mortgage), that is: whether there is an identity of interest between the debtor and the third party such that a suit against the non-debtor is one against the debtor and will deplete the estate; whether the non-debtor has contributed substantial assets to the reorganization; whether the affected classes have voted in favor of the plan; and, whether the plan provides a mechanism for the payment of all, or substantially all, of the claims of the class or classes affected by the injunction. This court finds that the factors are good guidelines to consider whether non-debtor release in a chapter 11 plan may be authorized. However, in fact intensive issues involving the equitable power of this court, the totality of circumstances will be considered. In this case the court considers as a relevant factor that there are two competing plans which pay the claim filed by the Indenture Trustee in full, and which do not contain the broad releases included in the secured creditor plan.

After considering and weighing the Master Mortgage factors and the totality of the circumstances, the court finds that the Indenture Trustee has failed to carry the burden of showing the extraordinary circumstances needed to allow the releases and injunction in the secured creditor plan. The alleged contribution of the Indenture Trustee, as representative of the noteholders, to the secured creditor plan, that is, carving out part of the security to pay unsecured creditors (including priorities) and administrative expenses, is not sufficient by itself to grant subject matter jurisdiction to this court to provide injunctive relief to non debtors or third parties. In re Combustion Engineering, Inc., 391 F. 3d 190, 224-225 (3d Cir. 2005). The releases are irrelevant to the success of the plan. In re Metro media Fiber Network, Inc., et al., 416 F.3D 136, 142-43 (2d. Cir. 2005). The facts in this case differ markedly from those in In re Codfish, Corp., 97 B.R. 132 (Bankr. D.P.R. 1988), wherein this court allowed a non debtor injunction.

- 16 -

In view of the foregoing, the court concludes that the release and injunctive provisions may not be allowed. However, since the Indenture Trustee has specifically consented to delete any provisions in 5.8 to 5.11 which the court finds invalid, dkt. 2176, the decision not to allow the release and injunction provisions does not affect confirmation of the plan.

**Post Confirmation Jurisdiction**

The court retains post confirmation jurisdiction pursuant to 28 U.S.C. § 1334 and § 157.

<strong>Conclusion</strong>

The court concludes that the plan meets the requirements of 11 U.S.C. § 1129(a) and § 1129(b). The court defers the entry of a confirmation order pending a determination of whether the plan proposed by Caribbean is confirmable, thus, triggering the applicability of 11 U.S.C. § 1129(c).

SO ORDERED.

In San Juan, Puerto Rico, this 11th day of December, 2006.

ENRIQUE S. LAMOUTTE
U.S. Bankruptcy Judge

- 17 -