IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:

EL COMANDANTE MANAGEMENT
COMPANY, LLC, et al.,

　　　　Debtors.

CASE NO. 04-10938 (ESL)

CHAPTER 11

(Jointly Administered)

**OPINION AND ORDER**

This case is before the court upon the objection filed by Mr. Don Drew, in his capacity as the Plan Administrator (the "Plan Administrator"), on March 5, 2007, to the final application for compensation filed by Latimer Biaggi Rachid & Godreau, LLP Law Offices ("LBRG"), and his request for disgorgement of all fees and expenses incurred by said law firm since November 23, 2005 (the "Omnibus Objection", Docket No. 2643, page 7-13).  On April 17, 2007 LBRG filed a response to the Plan Administrator's objection and requested summary disposition of this contested matter (Docket No. 2737).  In turn, the Plan Administrator filed a reply and a cross-motion for summary judgment on May 1, 2007 (Docket No. 2767).  A status conference on this matter was held on May 14, 2007.  For the reasons set forth below the Plan Administrator's objection is denied, and the final application for compensation filed by LBRG is approved.

On January 22, 2007 LBRG filed its final application for compensation (the "Fee Application") seeking court authorization for payment in the amount of $457,259.00 in fees, and $93,042.91 in incurred expenses, for a total of $550,301.9, in connection with services rendered from July 1, 2006 through January 2007 (Docket No. 2333) on behalf of the debtors in the jointly administered cases of Housing Development Administration, El Comandante Management Corp and El Comandante Capital Corp (collectively the "Debtors").  The Plan Administrator objects to the Fee Application by arguing that LBRG had a conflict of interest from, at least, November 23,

2005, which remained undisclosed until January 2007, when LBRG filed a motion withdrawing representation (Docket No. 2332). The Plan Administrator explains that on November 23, 2005 the Indenture Trustee filed the Disclosure Statement and Plan of Reorganization which included as Exhibit C, a letter dated November 21, 2005 from Firstbank which confirmed that on October 4, 2005 it issued a financing commitment to Camarero Race Track Corp ("Camarero") for the purpose of acquiring Debtors' assets. According to the Plan Administrator, in its motion withdrawing legal representation LBRG disclosed, for the first time, that Firstbank is its principal client, and it requested that the firm not file any pleadings which might affect the relationship between them and Camarero. Camarero purchased Debtor's assets on January 4, 2007 in accordance with the confirmed plan; Firstbank financed the asset purchase. The Plan Administrator contends that the fees and expenses requested should be denied in light of the undisclosed conflict of interest, and all fees and expenses incurred and paid since November 23, 2005 must be disgorged, as they were incurred during the existence of the undisclosed conflict of interest. The Plan Administrator further adds that the potential conflict of interest became an actual conflict when the Indenture Trustee's Plan became a competing plan to Debtors' Plan of Reorganization and LBRG filed objections on behalf of Debtors requesting that the court deny the approval of the Indenture Trustee's Plan, which proposed the sale of Debtors' assets to Camarero with Firstbank's financing. In support of his position the Plan Administrator cites 11 U.S.C. § 328(c) and the case of Ponce Marine Farm, Inc., 259 B.R. 484 (D.P.R. 2001).

In the Omnibus Objection the Plan Administrator provides that none of the fee claimants, including LBRG, are entitled to compensation or payment for services rendered to El Comandante Capital Corp. ("ECCC") because of its conversion to Chapter 7. The Plan Administrator argues that payment for any post-petition administrative fees and expenses

- 2 -

incurred in connection with the ECCC case must be sought within the Chapter 7 case of ECCC. Therefore, when applicable, the fee applications must be amended to deduct fees and expenses related to ECCC.

In a supplement to the Omnibus Objection, filed on March 10, 2007, the Plan Administrator pursues his objection based on LBRG's conflict of interest as expressed in the Omnibus Objection, and objects, for LBRG's failure to allocate among the three debtors all fees and expenses incurred throughout their employment, and for its failure to detail the fees and expenses already paid during the course of their retention, the fees and expenses that remain unpaid and the fees and expenses requested for the first time in this final Fee Application as required by Fed.R.Bankr.P. 2016. In the supplement to the Omnibus Objection the Plan Administrator provides no further discussion on any of the objections. The objections related to the allocation of the fees and expenses among the three debtors and that the fees incurred in connection with the case of ECCC must be sought within its Chapter 7 case were not raised again in any subsequent pleading, including in the Plan Administrator's reply to LBRG's response to the objection and request for summary judgment, or the report detailing the pending objections filed before the status conference held on May 14, 2007. These objections were not argued at the status conference. Under these circumstances this court construes these objections as waived. However, the court finds that it was impracticable for the professionals to apportion the fees among the three debtors and notes that all the professionals appointed by the court during these cases sought compensation without apportioning the services rendered among the three debtors, which, considering the nature of the cases, would have been impossible in most instances.

In its response to the Omnibus Objection LBRG requested summary disposition of the instant matter as there is no genuine issue of material fact pending determination. First, LBRG

argues that the Plan Administrator is not complying with Section 3.1 of the confirmed plan which provides that "each holder of an Allowed Administrative Expense Claim other than Fee Claims, shall receive on the Distribution Date or, if later, on the 10th (tenth) Business Day after such claim become Allowed, Cash in an amount equal to such Allowed Administrative Expense Claim ...". Consequently, the Plan Administrator's failure to pay LBRG's Fee Application constitutes a breach of the terms of the confirmed plan. LBRG admits that the Fee Application fails to list the fees incurred during the case, as well as payments received by the firm for approved fee applications in contravention with Fed. R. Bank. P. 2016. In the reply LBRG seeks to amend the Fee Application in compliance with the referred rule, albeit stating that the record of the case contains the information required. Regarding the conflict of interest allegation LBRG maintains that Firstbank was not a creditor in the case or a party in interest, thus there was no conflict of interest that would prevent them from representing the Debtor in this case. Furthermore, LBRG is a disinterested person as defined in Section 101(14) and does not have an adverse or competing interest against Debtors or Debtors' estates, thus there was nothing that would induce LBRG to act contrary to the best interests of the Debtors. In any event, LBRG provides that the Indenture Trustee, the Creditors Committee, Mr. Charles Cuprill, president of El Comandante Management Corp, and Mr. James Wilson, president of the board of directors of Debtors, all knew of their relationship with Firstbank. LBRG continues recounting some of the events that took place during the case which clearly showed that at all times they were acting in the best interests of the Debtors and assumed positions against Camarero (and therefore Firstbank) if necessary in the discharge of their duty as counsel for Debtors.

Lastly, it is LBRG's position that the Plan Administrator is barred from raising a conflict of interest objection based on the doctrine of collateral estoppel. On January 2, 2007 Camarero

- 4 -

filed an opposition to the fourth and fifth applications for compensation filed by LBRG based, among other things, on LBRG's failure to disclose a conflict of interest. This court denied Camarero's opposition on January 12, 2007 and approved the referred applications for compensation. LBRG argues that the order denying Camarero's opposition and approving the fee applications prevents re-litigation of this issue.

In turn, the Plan Administrator agrees that this matter may be disposed of summarily, but in their favor, because regardless of LRBG's good intentions, they had an obligation to disclose their relationship with Firstbank as it represented a potential conflict of interest. "All efforts of LBR&G to convince this Honorable Court that it performed valuable services or that their primary loyalty to the debtors was not undermined by the pull of Firstbank are not material." Reply to LBR&G's Response to Plan Administrator's Fee Objection and Cross-Motion for Summary Judgment, Docket No. 2767, page 2. The Plan Administrator argues that, in accordance with caselaw cited, this court needs to determine whether the competing interest of Firstbank (LRBG's principal client) and the simultaneous representation of Debtor created an incentive to act contrary to the interests of the Debtor, an incentive to place the Debtor and creditors at more than an acceptable risk, or a reasonable perception of an incentive. According to the Plan Administrator, after November 23, 2005 LBRG was not a disinterested person and as a result this court should deny compensation for services rendered from this day forward.

In connection with LBRG's allegation that the Plan Administrator is failing to comply with Section 3.1 of the confirmed plan by not remitting the payment on the fee applications filed, the Plan Administrator states that Section 3.1 is clear in that it does not apply to "Fee Claims", that is, a claim for compensation filed by professionals, like the ones filed by LBRG. In fact, the Plan Administrator has an obligation to review all administrative claims and requests for

- 5 -

compensation and object if necessary. Thus, Fee Claims are carved-out from the distribution scheme provided in Section 3.1 of the confirmed plan.

In response to the argument raised by LBRG that the order issued by this court approving the fourth and fifth applications for compensation and denying Camarero's objection to the applications prevents the Plan Administrator from raising its objection to the same fee applications under the doctrine of collateral estoppel, the Plan Administrator contends that an order awarding interim compensation is not final and the objection raised by Camarero only made a passing reference to the conflict of interest issue, thus the issue was not actually litigated and lacks the requirement of finality.

Findings of Fact

The following material facts are stipulated as being uncontested:

1. On November 18, 2004 the Application for Employment of the law firm of Latimer, Biaggi, Rachid & Godreau as counsel for Debtors Housing Development Administration, El Comandante Management Corp and El Comandante Capital Corp, was filed. (Docket No. 78)

2. The referred Application for Employment, in compliance with Fed.R.Bank.P. 2014, was accompanied by a verified statement executed by counsel Mr. David Godreau stating that LBRG did not have interests materially adverse to Debtors or Debtors' estates and was a disinterested person as defined in Section 101 of the Bankruptcy Code.

3. On November 29, 2004 the court entered an order approving the Application for Employment filed by LBRG pursuant to 11 U.S.C. § 327 unless the United States Trustee objected within ten days. No objection to the Application for Employment was ever filed by the United States Trustee.

4. On December 2, 2004 Mr. Herman Bauer, legal counsel for the Indenture Trustee, sent

- 6 -

a letter to LBRG requesting Mr. Godreau to disclose whether Firstbank was a creditor in this case and if the firm would represent said entity.

5. In response to the referred letter Mr. Godreau, on December 6, 2007, sent a letter to Mr. Bauer informing that after inquiring with Firstbank LBRG was advised that none of the Debtors or entities owed money to said bank. At that time Mr. Godreau also disclosed that LBRG represented Firstbank in different matters not related to these cases.

6. Firstbank was not a creditor of Debtors at the time of the filing of their bankruptcy petitions.

7. LBRG did not represent Firstbank in any matter related to the Debtors or was consulted by Firstbank in any matter related to the Debtors prior to or after its appointment as counsel in the present case.

8. Firstbank was represented by the law firm of Enrique Nassar Rizek in the above captioned case.

9. On November 23, 2005, the Indenture Trustee filed its Disclosure Statement which included as an Exhibit a financing commitment letter by Firstbank to Camarero, for the purchase of Debtors' assets under the Indenture Trustee's plan of reorganization.

10. Camarero executed a loan with Firstbank in early January 2007 and by January 22, 2007 LBRG sought the withdrawal of representation of Debtors, at which time it stated that Firstbank, its principal client, requested that Mr. Godreau not file any pleadings which might affect the loan relationship between the bank and Camarero.

11. At no time prior to the motion seeking withdrawal of representation did LBRG file a supplemental Fed.R.Bankr.P 2014 verified statement disclosing its relationship with Firstbank.

*Summary Judgment*

Rule 56 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure, provides that summary judgment should be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Bankr. P. 7056; *see also*, In re Colarusso, 382 F.3d 51 (1st Cir. 2004), citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "The summary-judgment procedure authorized by Rule 56 is a method for promptly disposing of actions in which there is no genuine issue as to any material fact or in which only a question of law is involved." 10A Wright and Miller, Federal Practice and Procedure § 2712 (3d ed. 1998). "Rule 56 provides the means by which a party may pierce the allegations in the pleadings and obtain relief by introducing outside evidence showing that there are no fact issues that need to be tried." Id. Summary judgment is not a substitute for a trial of disputed facts; the court may only determine whether there are issues to be tried, and it is improper if the existence of a material fact is uncertain. Id.

For there to be a "genuine" issue, facts which are supported by substantial evidence must be in dispute thereby requiring deference to the finder of fact. Furthermore, the disputed facts must be "material" or determinative of the outcome of the litigation. Hahn v. Sargent, 523 F.2d 461, 464 (1st Cir. 1975), cert. denied, 425 U.S. 904 (1976). When considering a petition for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party. Poller v. Columbia Broadcasting Systems, Inc., 368 U.S. 464, 473 (1962); Daury v. Smith, 842 F.2d 9, 11 (1st Cir. 1988).

The moving party invariably bears both the initial as well as the ultimate burden in

- 8 -

demonstrating its legal entitlement to summary judgment. Adickes v. Kress & Co., 398 U.S. 144, 157 (1970). See also López v. Corporación Azucarera de Puerto Rico, 938 F.2d 1510, 1516 (1st Cir. 1991). It is essential that the moving party explain its reasons for concluding that the record does not contain any genuine issue of material fact in addition to making a showing of support for those claims for which it bears the burden of trial. Bias v. Advantage International, Inc., 905 F.2d 1558, 1560-61 (D.C. Cir. 1990), cert. denied, 498 U.S. 958 (1990).

The moving party cannot prevail if any essential element of its claim or defense requires trial. López, 938 F.2d at 1516. In addition, the moving party is required to demonstrate that there is an absence of evidence supporting the nonmoving party's case. Celotex, 477 U.S. at 325. See also, Prokey v. Watkins, 942 F.2d 67, 72 (1st Cir. 1991); Daury, 842 F.2d at 11. In its opposition, the nonmoving party must show genuine issues of material facts precluding summary judgment; the existence of some factual dispute does not defeat summary judgment. Kennedy v. Josepthal & Co., Inc., 814 F.2d 798, 804 (1st Cir. 1987). See also Kauffman v. Puerto Rico Telephone Co., 841 F.2d 1169, 1172 (1st Cir. 1988); Hahn, 523 F.2d at 464. A party may not rely upon bare allegations to create a factual dispute but is required to point to specific facts contained in affidavits, depositions and other supporting documents which, if established at trial, could lead to a finding for the nonmoving party. Over the Road Drivers, Inc. v. Transport Insurance Co., 637 F.2d 816, 818 (1st Cir. 1980).

The moving party has the burden to establish that it is entitled to summary judgment; no defense is required where an insufficient showing is made. López, 938 F.2d at 1517. The nonmoving party need only oppose a summary judgment motion once the moving party has met its burden. Adickes, 398 U.S. at 159. The court must interpret the record in the light most favorable to the nonmoving party, reconciling all competing inferences in that party's favor.

- 9 -

However, "[n]either wishful thinking ... nor conclusory responses unsupported by evidence will serve to defeat a properly focused Rule 56 motion." Velazquez-Garcia v. Horizon Lines of Puerto Rico, Inc., 473 F.3d 11 (1st Cir. 2007) citing Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990).

In this case the parties have agreed in their motions that there is no genuine issue as to any material fact that needs to be determined at trial and therefore, under these circumstances, summary disposition of this matter is appropriate.

*Applicable Law*

Section 327(a) sets the standard for the employment of professionals in bankruptcy cases.

> Except as otherwise provided in this section, the trustee[1], with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 USC § 327(a)[2]. In accordance with this provision a debtor in possession must seek the court's approval of the retention of their legal representation which will only be granted upon a showing that this professional is a disinterested person and does not hold an interest adverse to the interests of the estate.

Although the Bankruptcy Code does not define the phrase "interest adverse to the estate" which has been left to the courts to interpret, in its section 101(14) it does defines the term

---

[1] Generally, subject to certain limitations not applicable to this situation, a debtor in possession in a Chapter 11 case will perform all the functions and duties and has all the rights and powers, of a trustee serving in a case under this chapter. 11 U.S.C. § 1107(a).

[2] Unless otherwise noted, all statutory section references herein are to the Bankruptcy Reform Act of 1978, as amended, 11 USC §§ 101, *et seq.* applicable in the case at bar.

- 10 -

"disinterested person" as a person that -

> (A) is not a creditor, an equity security holder, or an insider;

> (B) is not and was not an investment banker for any outstanding security of the debtor;

> (C) has not been, within three years before the date of the filing of the petition, an investment banker for a security of the debtor, or an attorney for such an investment banker in connection with the offer, sale or issuance of a security of the debtor;

> (D) is not and was not, within two years before the date of the filing of the petition, a director, officer, or employee of the debtor or of an investment banker specified in subparagraph (B) or (C) of this paragraph; and

> (E) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor or an investment banker specified in subparagraph (B) or (C) of this paragraph, or for any other reason

11 U.S.C. § 101(14). An "adverse interest" has been described by the courts as

> possession or assertion of mutually exclusive claims to the same economic interest, thus creating either an actual or potential dispute between rival claimants as to which ... of them the disputed right or title to the interest in question attaches under valid and applicable law; or (2) [the possession of] a predisposition or interest under circumstances that render such a bias in favor of or against one of the entities.

Rome v. Braunstein, 19 F.3d 54, 57 - 58 (1st Cir. 1994). The Bankruptcy Code is particularly stringent in its conflict of interest restraints on the employment of professional persons in bankruptcy cases in order to ensure that the approved professional person is not inappropriately influenced and tenders undivided loyalty and untainted advise in furtherance of his fiduciary duties to the debtor and the estate. *Id.* The Bankruptcy Code in its section 328(c) sets forth the sanctions for violations of the requirements for employment of professionals by providing that

> the court may deny allowance of compensation for services and reimbursement of expenses of a professional person employed under section 327 or 1103 of this title if, at any time during such professional person's employment under section 327 or 1103 of this title, such professional person is not a disinterested person, or represents or holds an interest adverse to the interest of the estate with respect to the matter on which such professional person is employed.

- 11 -

11 U.S.C. § 328(c). Consequently, pursuant to the above cited provision, the court may impose a "penalty" consisting of denial of compensation if at any time during their employment the professional person approved by the court pursuant to § 327, ceases to be a disinterested person or holds an interest adverse to the interests of the estate as required by the referred provision. *Id.* at 58. In order to determine whether the professional holds a disqualifying conflict of interest the bankruptcy court must determine "whether any competing interest of a court-appointed professional created either a meaningful incentive to act contrary to the best interests of the estate and its sundry creditors-an incentive sufficient to place those parties at more than an acceptable risk-or the reasonable perception of one." *Id.* The test involves an objective analysis of the facts of each particular situation for even the "appearance of impropriety", which in and of itself can be sufficient for disqualification or disgorgement. *Id.* However, "horrible imaginings alone cannot be allowed to carry the day ... [n]ot every conceivable conflict must result in sending counsel away to lick his wounds...[a]nd, when all is said and done, doubts are to be resolved in favor of invalidation." In re Martin, 817 F.2d 175, 183 (1st Cir. 1987).

> Of course, disclosure of facts suggesting a conflict is not invariably followed by disqualification. In special circumstances, for example, the bankruptcy court could determine, in the sound exercise of its discretion, that any potential impairment of its institutional integrity, or risk of divided loyalty by counsel, was substantially outweighed by the benefits to be derived from counsel's continued representation of multiple entities or the impracticability of disentangling multiple interests "without unreasonable delay and expense." In re Hoffman, 53 B.R. 564, 566 (Bankr.W.D.Ark.1985). *See* In re O'Connor, 52 B.R. at 895 (noting countervailing interest in "curtailment of administrative expenses" where potential for conflict is dormant or remote). In no event, however, may counsel *presume* dispensation from the full disclosure required by § 327(a) or the sanctions authorized under § 328(c). *See also* Fed.R.Bankr.P. 2014(a).

Rome, 19 F.3d at 59. The disclosure rules are to be applied strictly and do not allow the attorney to withhold information when he or she has determined the disclosure is unnecessary as no conflict exists. In re Jore Corporation, 298 B.R. 703, 725 (Bankr. D. Mont., 2003). When

- 12 -

counsel fails to comply with the disclosure requirements of § 327 and Fed.R.Bankr.P. 2014(a) they subject themselves to sanctions independent from the sanctions for the actual representation of competing interests. *Id.*

Fed R Bankr P 2014, implementing § 327, provides that:

(a) Application for an order of employment
An order approving the employment of attorneys, accountants, appraisers, auctioneers, agents, or other professionals pursuant to § 327, § 1103, or § 1114 of the Code shall be made only on application of the trustee or committee. The application shall be filed and, unless the case is a chapter 9 municipality case, a copy of the application shall be transmitted by the applicant to the United States trustee. The application shall state the specific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee. **The application shall be accompanied by a verified statement of the person to be employed setting forth the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.**

Fed.R.Bankr.P. 2014. (Emphasis ours).  The purpose of the application to employ professional is to provide all parties with the information necessary to determine if the professional meets the criteria set forth in § 327, that is, whether the professional is actually disinterested and does not hold or represent an interest adverse to the estate, and in accordance with Rule 2014, necessary. 9 Lawrence P. King, et al., Collier on Bankruptcy, ¶ 2014.03, p 2014-5(15th ed rev'd 1997). "The duty of professionals is to disclose all connections with the debtor, debtor-in-possession, insiders, creditors and parties in interest ... They cannot pick and choose which connections are irrelevant or trivial ... No matter how old the connection, no matter how trivial it appears, the professional seeking employment must disclose it." In re Jore, 298 B.R. 725[3].

---

[3]  The facts in the above-captioned case differ markedly with the ones inIn re Jore wherein debtor's counsel's firm had as a client the primary debtor-in-possession (DIP) lender, and was the parent corporation of the primary pre-petition lender (Wells Fargo).

- 13 -

## Discussion

*Conflict of Interest*

The Plan Administrator argues that fees and expenses requested by the law firm of LBRG should be denied in light of the undisclosed conflict of interest consisting in that the firm's principal client is and was during the pendency of this case, Firstbank. The Plan Administrator further adds that all fees and expenses incurred and paid since November 23, 2005 must be disgorged, as they were incurred during the existence of the undisclosed conflict of interest. The Plan Administrator maintains that LBRG had a duty to disclose its connection with Firstbank from the moment it became known that Firstbank was involved in the case through the Indenture Trustee's disclosure statement and plan of reorganization. The failure to comply with its obligation to disclose entails denial of the compensation requested and disgorgement of the monies received in relation to the case.

We agree with the Plan Administrator that a professional person employed under § 327 must disclose all his connections to the debtor, creditors, parties in interest, their attorneys, accountants, the United States Trustee and any person employed in the office of the United States Trustee in a verified statement in compliance with Fed.R.Bankr.P. 2014(a), that is, it is not sufficient to state that parties were aware of the connections from other sources. However, in this case, Firstbank is a financial institution which, at the time the Indenture Trustee's disclosure statement and plan of reorganization were filed, had made a commitment to Camarero Race Track to finance the purchase of Debtors' assets. The asset purchase was consummated in January 2007. Soon thereafter LBRG sought to withdraw as counsel for Debtors. Before the purchase took place, Firstbank was not the debtor, a creditor, even a party in interest, or an

- 14 -

attorney or accountant, the United States Trustee or any person employed in the office of the United States Trustee. Therefore, pursuant to Fed.R.Bankr.P. 2014(a) LBRG did not have an obligation to disclose its connection with Firstbank.

Furthermore, this court fails to see how Firstbank's interests were adverse to the interests of the estate. As the financial institution committed to lend Camarero the funds needed to purchase Debtors' assets, Firstbank was more of an observer of the proceedings waiting to see if their potential client would need the credit offered. At the time, Firstbank would only stand to loose a business opportunity. In fact, Firstbank did not have standing to present its position on matters affecting this case, as it was not even a party in interest. Furthermore, Firstbank was represented by different counsel. Under these circumstances it would be very difficult to find that LBRG had an actual or potential conflict of interest for representing Debtors while having Firstbank as a client in other matters. After carefully and conscientiously analyzing the Plan Administrator's arguments regarding the alleged conflict of interest, this court finds that LBRG does not represent, in any way, an interest adverse to the estate and does not have a conflict of interest warranting disqualification. This court finds that LRBG, which represented Debtors and represented Firstbank in other matters, did not have a "competing interest which created a meaningful incentive to act contrary to the best interests of the estate and its sundry creditors-an incentive sufficient to place those parties at more than an acceptable risk-or the reasonable perception of one", in view of Firstbank's peripheral participation in this case.

The cases cited by the Plan Administrator in its briefs regarding conflict of interests are inapplicable to this matter as they did not present analogous situations. See, Rome v. Braunstein, 19 F.3d 54 (involved the simultaneous representation of the Chapter 11 debtor and the Chapter 7 debtor's sole shareholder against whom the Chapter 11 debtor had preferential and fraudulent

transfer claims; In re Martin, 817 F.2d 175 (involved the validity of mortgage on debtor's real property in favor of their counsel); In re Ponce Marine Farm, 259 B.R. 484 (involved the purchase of the debtor's secured claims by a company owned by debtor's counsel's close relatives during the bankruptcy proceedings, a transaction put together by debtor's counsel); In re Comercial Apotecaria, Inc., 2006 Bankr. LEXIS 3821 (Dist. P.R. 2006)(involved the dual representation of debtor and its sole shareholders with adverse interests).

Although not considered in reaching today's determination, it must be noted that LBRG, at all times during the case, showed its undivided loyalty to Debtors evidenced by the multiple oppositions to the Indenture Trustee's proposals, and appeals of orders in favor of the Indenture Trustee and, consequently, Camarero.

*Fed.R.Bankr.P. 2016*

This court admits the amendments to the Fee Application made by LBRG in its response to the Plan Administrator's Omnibus Objection, in compliance with Fed.R.Bankr.P 2016. The objection raised by the Plan Administrator regarding LBRG's failure to comply with Fed.R.Bankr.P 2016 is hereby denied.

- 16 -

Conclusion

In view of the foregoing, this court hereby denies the Plan Administrator's objection to the Final Application for Compensation filed by the law firm of Latimer Biaggi Rachid & Godreau on January 22, 2007 (Docket No. 2333), and his request for disgorgement of all fees and expenses incurred and paid from November 23, 2005.  Latimer Biaggi Rachid & Godreau's Final Application for Compensation filed on January 22, 2007 is approved.  The Plan Administrator shall make the corresponding disbursement forthwith.

SO ORDERED.

In San Juan, Puerto Rico, this 2nd day of August 2007.


ENRIQUE S. LAMOUTTE
U. S. Bankruptcy Judge

- 17 -