IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:

EL COMANDANTE MANAGEMENT
COMPANY, LLC, et al.,

Debtors.

CASE NO. 04-10938 (ESL)

CHAPTER 11

(Jointly Administered)

**OPINION AND ORDER**

This case is before the court upon the Conditional Notice on Effectiveness of Payment of Success Fee (the "Conditional Notice") filed by Mr. Charles A. Cuprill on January 5, 2007 (Docket No. 2265, 2266) and the objection to Mr. Cuprill's administrative claim filed by Mr. Don Drew, in his capacity as the Plan Administrator (the "Plan Administrator") on March 5, 2007 (Docket No. 2645). Mr. Cuprill filed a response to the Plan Administrator's objection on April 20, 2007 (Docket No. 2745). In turn, the Plan Administrator filed a reply to Mr. Cuprill's response on May 7, 2007 (Docket No. 2798) and Mr. Cuprill filed a sur-reply on May 16, 2007 (Docket No. 2810). A status conference was held on May 14, 2007. On May 17, 2007 the Plan Administrator filed a response to the sur-reply (Docket No. 2816). For the reasons explained herein the Conditional Notice is denied and Plan Administrator's objection is denied in part and granted in part.

The Conditional Notice prayed that an order be entered directing the disbursement of the amount of $250,000 success fee, to Mr. Charles Cuprill, by El Comandante Management Corp. (the "Debtor") or the Plan Administrator, if and when the order confirming the plan becomes final. Mr. Cuprill explains in the Conditional Notice that he entered into an agreement with Debtor, contained in a letter dated November 17, 2004 (the "Engagement Letter"), whereby he became its president and Chief Executive Officer and would act in that capacity during the

Debtor's and its affiliate's Chapter 11 proceedings. On January 3, 2007 the court entered an order confirming the plan of reorganization (the "Plan") in the cases of El Comandante Management Corp (the "Debtor"), Housing Development Associates ("HDA") and El Comandante Capital Corp. ("ECCC"), proposed by secured creditor Wells Fargo Bank, N.A. in its capacity as Indenture Trustee for the holders of 11 3/4% first mortgage notes due December 2003 (the "Indenture Trustee"). Mr. Cuprill states that his agreement with Debtor provides, *inter alia*, for a success fee of $250,000 upon the confirmation of Debtor and its affiliates' plan of reorganization or the favorable conclusion of the bankruptcy proceedings. Debtor and HDA, and Caribbean Thoroughbred Racing Company, Inc. have appealed the order confirming the Plan. Mr. Cuprill concludes that in the event the order confirming the Plan becomes final, either Debtor or the Plan Administrator will be required to pay him the $250,000 success fee.

The Plan Administrator argues in his objection that 11 U.S.C. § 327 requires that Mr. Cuprill's employment as CEO of Debtor be approved by the court after due notice given. The Plan Administrator argues that because Debtor never sought the court's approval of Mr. Cuprill's retention, it must deny the request for the payment of the success fee, and order the disgorgement of all monies received by Mr. Cuprill from Debtor in his capacity as president and CEO. The Plan Administrator further contends that Mr. Cuprill's compensation; of $25,000 monthly with a guaranteed one year minimum, was excessive considering he was able to maintain his law practice. Furthermore, according to the Plan Administrator Mr. Cuprill is not entitled to the success fee because he did not meet the conditions set forth in the Engagement Letter in order to be entitled to such fee.

Mr. Cuprill states in his response to the Plan Administrator's objection that he was employed by Debtor as its president and CEO during the regular course of Debtor's business, he

- 2 -

was not retained as a professional person pursuant to 11 U.S.C. § 327, and thus no application for his appointment was required. In support of his argument he cites the case of <u>Delta Petroleum (P.R.) LTD.</u>, 164 B.R. 425 (Bankr. P.R. 1994). Mr. Cuprill states that as president and CEO he oversaw all aspects of Debtor's operations and dealings, including taking cost reduction measures needed for a profitable operation and reorganizing an entity that was in disarray and operating ineffectively. That he is an experienced bankruptcy attorney does not change the fact that he was hired not as an attorney, but as the president and CEO, for his experience and knowledge in all aspects of the thoroughbred industry. In fact, it was Latimer Biaggi Rachid and Godreau who at all times acted as attorneys for Debtor during the bankruptcy proceedings. Mr. Cuprill maintains that his compensation was commensurate with his duties and responsibilities. He argues that the Indenture Trustee, the Creditors' Committee, the United States Trustee, creditors and parties in interest were all well aware of his employment and compensation, and no one contested his employment, except for the Racing Administrator. The Racing Administrator requested the appointment of Mr. Wigberto Lugo as a Chapter 11 trustee, thereby replacing Mr. Cuprill as Debtor's president and CEO, in part because of Mr. Cuprill's conflict of interest as president of another plan proponent, Caribbean Thoroughbred Racing Company, Inc. The court denied the Racing Administrator's motion and determined that Mr. Cuprill was qualified to manage Debtor's affairs. Mr. Cuprill, thus concludes, that the court has decided the issues raised by the Plan Administrator regarding his appointment and the decision of the court constitutes the law of the case, binding on all parties. Also, Mr. Cuprill maintains that the language of the Engagement Letter containing the agreement with Debtor, is clear and unambiguous, entitling him to the payment of the success fee, in the event the confirmation order becomes final.

In its reply to Mr. Cuprill's response, the Plan Administrator argues that, contrary to Mr.

- 3 -

Cuprill's assertions, <u>Delta Petroleum (P.R.) LTD.</u>, 164 B.R. 425 (Bankr. P.R. 1994), supports the contention that Mr. Cuprill was not employed in the ordinary course of business and that his was an appointment requiring court approval pursuant to § 327. Again, the Plan Administrator states that Mr. Cuprill's compensation was excessive, that according to the agreement between Mr. Cuprill and Debtor, Mr. Cuprill is not entitled to the "success fee" and that the "law of the case" doctrine is not applicable herein. As to this last argument the Plan Administrator states that the orders of the court disposing of the Racing Administrator's request for the appointment of a Chapter 11 trustee do not address issues related to Mr. Cuprill's engagement; the need for court approval of his retention, his entitlement to a success fee, the reasonableness of his salary and disgorgement. This doctrine only applies to issues "presented" and "decided" and because the issues brought by the Plan Administrator in his objection have not been "settled", the doctrine is not applicable.

In his sur-reply Mr. Cuprill maintains that he is not a professional under § 327 and he is entitled to the $250,000 success fee. In support of this last assertion an unsworn declaration of Mr. James Wilson is attached to the sur-reply, to show the intention of the contracting parties. In said declaration Mr. Wilson states that the Engagement Letter between Debtor and Mr. Cuprill provided for a $250,000 success fee payable to Mr. Cuprill in the event of the confirmation of Debtor's and its affiliates plan of reorganization or the favorable conclusion of Debtor's bankruptcy proceedings and that both of these events took place entitling Mr. Cuprill to the success fee. Mr. Wilson further states that it was not a condition to Mr. Cuprill's success fee that the confirmed plan had to be the one proposed by Debtor or its affiliates.

In his response to the sur-reply the Plan Administrator argues, *inter alia*, that Mr. James Wilson's unsworn declaration presents a distorted view of the engagement agreement between

Mr. Cuprill and Debtor, as it is contrary to the clear language of the November 17, 2004 Engagement Letter.  Thereafter, the Plan Administrator requests that this court deny Mr. Cuprill's Conditional Notice and issue an order for the disgorgement of all fees and expenses paid to Mr. Cuprill from November 17, 2004 onward, or alternatively, allow the discovery on the subject of Mr. Cuprill's engagement and the role he played during the bankruptcy proceedings and schedule an evidentiary hearing.

At the status conference held on May 14, 2007, the Plan Administrator stated that the Engagement Letter provides that Mr. Cuprill, as president and CEO of the Debtor, would "oversee the bankruptcy proceedings and ensure an effective reorganization of the estate", consequently he played a central role in the administration of the estate and was, thus, a professional pursuant to 11 U.S.C.§ 327(a).  Transcript of May 14, 2007 hearing, Docket No. 2828, page 122-123.  The court asked the Plan Administrator if he had any evidence or support to challenge whether or not Mr. Cuprill indeed acted as the president and Chief Operating Officer of Debtor throughout the bankruptcy proceedings.  The Plan Administrator responded that Mr. Cuprill conceded that he oversaw the bankruptcy proceedings and that renders him a professional within the purview of § 327(a).  The following is an excerpt of the discussion that took place at the May 14, 2007 status conference on this matter.

> THE COURT: Do you have any evidence or support to challenge whether or not Mr. Cuprill indeed acted as the president and chief operating officer of El Comandante throughout the bankruptcy proceedings?
> ...
> MR. PEREZ OCHOA [attorney for the Plan Administrator]: Your Honor, the fact that he's conceding that he oversaw bankruptcy proceedings –

Docket 2828, page 133-134

> THE COURT: No.  That's – but that's not the – my question.  My question is: did Mr. Cuprill act or was engaged as a professional person within the meaning of section 327 as challenged, was an employee hired coetaneous, or incidental, or immediately after the

filing of the petition to act as president and chief operating officer?

MR. PEREZ OCHOA: He acted as a professional.  He has admitted that in his moving papers... And he has admitted that today, Your Honor.

THE COURT: And that's why I ask you: do you have, then, any evidence that he acted as a professional and not as an employee?

MR. PEREZ OCHOA: Your Honor, if he concedes that for the record, I don't need any evidence.

THE COURT: But he has not con–

MR. PEREZ OCHOA: That's a party admission.

THE COURT: That he concedes that he acted as a professional?

MR. PEREZ OCHOA: The test to determine whether he's a professional, which is the issue here, whether he is a professional, is to determine whether that person played a central role in the administration of the estate.
If he concedes, Your Honor, that he was – the fact that he was a lawyer was helpful to the reorganization process, that he oversaw the bankruptcy proceedings, and to achieve an effective reorganization, that – those admissions are sufficient to qualify him within the purview of a professional according to case law.

Docket No. 2828, page 135-137.

MR. CUPRILL HERNANDEZ: If – if – if I may?
Your Honor, we're playing with words here.  I have not conceded that.  What I said was that I was hired as a chief executive officer and president of El Comandante and part of my responsibilities were to oversee, like any other chief executive officer, the construction of the bankruptcy process, not as a professional, but as administrator of the racetrack, which was what I was.
My professionals were hired and approved and appointed by the Court.

Docket No. 2828, page 137.

THE COURT: ... other than the engagement letter, do you have any evidence or think you can reasonably foresee that you can obtain evidence to support that Mr. Cuprill was not acting as Debtor's president and chief operating officer?

MR. PEREZ OCHOA: Your Honor, I don't – with all due respect, I – I don't have a crystal ball, but that's what discovery is all about.

Docket No. 2828, page 143.

- 6 -

THE COURT: For me to schedule an evidentiary hearing on the issue, you must present to me a corroboratal (sic) claim that Mr. Cuprill was not an employee of the Debtor but was a professional.

What – upon what do you base your argument that Mr. Cuprill was a professional as opposed to an employee?

MR. PEREZ OCHOA: The text of the letter agreement. The reply by Mr. Cuprill, and the conversations that I have with Counsel for the Indenture Trustee where they acknowledge and noted – ...

– that, during the course of the bankruptcy proceedings, they frequently spoke with Mr. Cuprill on issues having to do what (sic) the administration of the estate.

Docket No. 2828, page 145.

MR. PEREZ OCHOA: ...
> But, on what do we base ourselves to answer Your Honor's question?
> On the nature of the letter agreement, the nature of the engagement, Cuprill's reply and his concessions here.

Docket No. 2828, page 146-147.

Discussion

In order to adequately address the issues presented by the Plan Administrator, we must transcribe relevant parts of the November 17, 2004 Engagement Letter attached to the Conditional Notice.

Dear Mr. Wilson:

As requested during the board of directors meeting of Equus Gaming Company, LP and Equus Entertainment Corporation (collectively "Equus") held on November 16, 2004, the following are the terms and conditions under which I can make myself available **as Chief Executive Officer ("CEO") of El Comandante Management Company, LLC ("El Comandante") for the purpose of overseeing the bankruptcy proceedings and the operations of El Comandante with the goal of achieving El Comandante's and its affiliates' effective reorganization**.

1. Salary of $25,000 per month due on the 30th of each month, for a guaranteed period of one year, commencing in November 2004.

2. Direct payment or reimbursement of out of pocket necessary expenses, upon presentation of the corresponding vouchers or statements, or their justification.

3. **Upon confirmation of El Comandante's and its affiliates' plan of**

-7-

**reorganization or the favorable conclusion of the bankruptcy proceedings a success fee of $250,000**

4. ...

5. ...

If in agreement, please so confirm with your signature in the space provided below.

Cordially,

signed
Charles A. Cuprill- Hernandez

AGREED TO, ON THIS 19 DAY OF NOVEMBER, 2004

By: signed
James J. Wilson
Chairman of the Board of Directors

Docket No. 2266, Ex 1 (Emphasis ours).

*Section 327(a)*

The Bankruptcy Code in its section 327(a) provides as follows:

Except as otherwise provided in this section, the trustee[1], with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327(a)[2].

"The general view is that officers of the debtor are not professionals whose employment must be approved by the court. 3 Lawrence P. King, Collier on Bankruptcy, ¶ 327.02[6][c], p.

---

[1]Generally, subject to certain limitations not applicable to this situation, a debtor in possession in a Chapter 11 case will perform all the functions and duties and has all the rights and powers, of a trustee serving in a case under this chapter. 11 U.S.C. § 1107(a).

[2]Unless otherwise noted, all statutory section references herein are to the Bankruptcy Reform Act of 1978, as amended, 11 USC §§ 101, *et seq.* applicable in the case at bar.

- 8 -

327-14 (15th ed rev'd 2006). The correct analysis is that executives of a debtor in possession should not be treated as a "professional person." To hold otherwise and require court approval of the selection of the debtor's management would directly involve the bankruptcy court in the daily operations of the debtor's management and business." *Id.* at 327-15. In fact 327(a) could not apply to the post petition employment of existing management of a debtor-in-possession because the plain language of the statute requires that the professional to be employed be disinterested and by definition insiders are not disinterested. Matter of All Seasons Industries, Inc. 121 B.R. 822, 825 (Bankr. N.D. Ind., 1990). "It is only those who deal with the actual reorganization of the debtor (rather than the ongoing business of the debtor) who are required to be employed under § 327 and whose applications for payment must be approved by the court." In re Pacific Forest Industries, Inc., 95 B.R. 740, 743 (Bankr. C.D. Cal, 1989). "It is clearly the intent of Congress that professionals involved in the reorganization effort itself be carefully scrutinized, that their dealings be open to the public, that they maintain the distance from the debtor that is not possible for an employee, and that they do not drain the debtor of the capital that it needs to fund its reorganization." *Id.*

The Engagement Letter clearly sets forth that Mr. Cuprill was the Chief Executive Officer of Debtor, thus an employee, an insider, not disinterested and, in light of the caselaw cited, not a professional within the purview of § 327(a). The Plan Administrator argues that because he was hired post petition and "for the purpose of overseeing the bankruptcy proceedings and the operations of El Comandante with the goal of achieving El Comandante's and its affiliates' effective reorganization" that he was a professional under § 327 requiring court authorization for his retention. We disagree. As the president and Chief Executive Officer of Debtor he had the duty to oversee the bankruptcy proceedings, and in fact would have been derelict of his duties if

he had failed to pay attention to the bankruptcy case. The Engagement Letter adds that he would be in charge of the operations of the Debtor, thus, overseeing the bankruptcy proceedings was not his only task. As reflected in the excerpts of the May 14, 2007 status conference transcript, the Plan Administrator did not contest that Mr. Cuprill was not engaged in the operations of the business, his sole argument was based on the fact that Mr. Cuprill was actively involved in the development of the bankruptcy case as president of the Debtor. But, that was his duty. The Plan Administrator failed to present a corroborated claim that Mr. Cuprill was not an employee of the Debtor but a professional under § 327. The basis for his contention was in essence the Engagement Letter and Mr. Cuprill's assertions, however, both clearly expressed that he was in charge of the operations of the Debtor. No evidence was presented to suggest that someone else was hired to run the business. The fact that he was engaged after the bankruptcy petition was filed and that he is an attorney with bankruptcy experience does not change the fact that he acted as the manager of Debtor, with all the implications it entailed, considering the Debtor was under the protection of Chapter 11 of the Bankruptcy Code. Furthermore, Latimer Biaggi Rachid & Godreau, specifically Mr. Godreau, always acted as Debtor's legal representation, not Mr. Cuprill, and as a professional pursuant to § 327, his appointment was approved by the court.

The cited case of In re Delta Petroleum (P.R.) Ltd., 164 B.R. 425 (Bankr. D.P.R. 1994) is not inconsistent with our decision today. The issue in that case was whether Mr. Jose Jaime Folguera Belvis was a professional pursuant to § 327, thus requiring court approval of his appointment. Mr. Folguera was the debtor's marketing director for the greater San Juan area pursuant to a contract entered into with debtor prior to the filing. Mr. Folguera had other clients for whom he provided services similar to those provided to the debtor in that case. There was no

- 10 -

question as to whether he participated in the bankruptcy proceedings because as a marketing director that was not part of his duties. The question before the court was in relation to the fact that he provided services to the debtor pursuant to a contract. The court concluded that Mr. Folguera "was an employee who was retained by the Debtor in possession because his services were needed during the ordinary course of the business' operation" and thus, was not a professional person who needed court appointment within the meaning of § 327. Delta Petroleum, 164 B.R. at 428. In the present case there is no doubt that Debtor needed the services of a president and Chief Executive Officer for the operation of its business and that as part of his duties it was important that he oversee the bankruptcy proceedings. It is in this sense that he was hired in the ordinary course of Debtor's business.

The Plan Administrator argues that even if Mr. Cuprill had been properly retained his salary of $25,000 a month as president and Chief Executive Officer of the Debtor was excessive. This court finds that Mr. Cuprill's salary was not excessive considering the magnitude and complexity of the services performed.

*The Success Fee*

Mr. Cuprill argues that he is entitled to collect the success fee in accordance with paragraph 3 of the Engagement Letter as both of the conditions established therein were met.

> Upon confirmation of El Comandante's and its affiliates' plan of reorganization or the favorable conclusion of the bankruptcy proceedings a success fee of $250,000

Engagement Letter, Docket No. 2266.

The Puerto Rico Civil Code provides in its article 1233 as follows

> [i]f the terms of a contract are clear and leave no doubt as to the intentions of the contracting parties, the literal sense of its stipulations shall be observed. If the words should appear contrary to the evident intention of the contracting parties, the intention shall prevail.

- 11 -

31 L.P.R.A. § 3471.  In order to fully understand the agreement between the parties, the contract, in this case, the Engagement Letter, must be read as a whole, that is, paragraph 3 which includes the conditions for the success fee, and the initial paragraph where Mr. Cuprill made himself available as Chief Executive Officer ("CEO") of El Comandante Management Company, LLC ("El Comandante") "for the purpose of overseeing the bankruptcy proceedings and the operations of El Comandante **with the goal of achieving El Comandante's and its affiliates' effective reorganization"**.

The Indenture Trustee's plan of reorganization was confirmed, and pursuant to the same Debtor's assets were sold to Camarero Racetrack.  Debtor's plan of reorganization was not confirmed.  Neither were Debtor's affiliates' plans.  We must bear in mind that the contracting parties here are Mr. James Wilson as Chairman of the Board of Directors of El Comandante Management Company LLC, Debtor, and Mr. Charles Cuprill.  The confirmation of the secured creditor's plan of reorganization is not, from the Debtor's perspective, a favorable conclusion of the bankruptcy proceedings.  During the course of the proceedings, Debtor vigorously opposed the confirmation of the secured creditor's plan of reorganization.  In fact, the order confirming the secured creditor's plan has been appealed by Debtor.  Furthermore, prior to confirmation the case of one of Debtor's affiliates, El Comandante Capital Corp., was converted to Chapter 7 (Docket No. 2172).  On the day the confirmation order was entered Debtor moved for the conversion of the instant case to Chapter 7, because "[b]oth Debtors and Caribbean's' plan provided for the payment for 100% of all unsecured creditors of Debtors.  Wells Fargo's plan does not provide for the payment of all of debtors unsecured creditors" (Docket No. 2251).  The motion to convert was later denied by the court.  Debtor's actions and statements clearly show that the confirmation of the secured creditor plan was not a "favorable conclusion of the

- 12 -

bankruptcy proceedings". The goal in appointing Mr. Cuprill as Chief Executive Officer was the effective reorganization of the Debtor. The same was certainly not achieved. Thus, the bankruptcy proceedings were not concluded favorably.

In summary, the conditions established in the Engagement Letter for a "success fee" were not met, thus, Mr. Cuprill is not entitled to the $250,000 fee if the order confirming the secured creditor's plan of reorganization becomes final.

Conclusion

In view of the foregoing this court hereby finds that Mr. Cuprill was not a professional within the purview of § 327 and, thus his retention as president and Chief Executive Officer of Debtor did not require prior court approval. Furthermore, Mr. Cuprill is not entitled to the "success fee" provided in the Engagement Letter as the conditions for the same were not met. Therefore, the Conditional Notice on Effectiveness of Payment of Success Fee filed by Mr. Charles A. Cuprill on January 5, 2007 is hereby denied.

SO ORDERED.

In San Juan, Puerto Rico, this 10th day of August 2007.

_____
ENRIQUE S. LAMOUTTE
U. S. Bankruptcy Judge